NORFOLK PACKING COMPANY, APPELLEE, v. AMERICAN INSURANCE COMPANY OF NEWARK, APPELLANT.

FILED JUNE 12, 1930. No. 27115.

*C. C. Flansburg,* for appellant.

*W. L. Dowling* and *Shurtleff & Spillman, contra.*

Heard before GOSS, C. J., DEAN, THOMPSON, EBERLY and DAY, JJ., and CARTER, District Judge.

CARTER, District Judge.

This was an action brought in the district court for Madison county by the plaintiff, appellee herein, against the defendant, appellant herein, for damages under a tornado policy of insurance. The district court upon a trial of the case, a jury having been waived, found for the plaintiff and entered judgment against the defendant for $3,000, whereupon an appeal was taken to this court.

The defendant urges that the trial court erred, (1) in holding that the property damaged was covered by the policy, (2) in holding that there was a waiver of proof of

loss, (3) in entering judgment for the entire face of the policy and in ignoring all provisions of the policy relating to additional insurance, and (4) in entering judgment for $3,000, for the reason that such a judgment is excessive.

The first question raised by the defendant is whether or not the property damaged was covered by the policy of insurance. The insurance policy in this case is known as a Nebraska standard form tornado policy. In order to understand the question here presented, the descriptions of the property insured as contained in the policy are set out as follows: "$15,000 on the three story composition-roof brick building, its additions adjoining and communicating, including foundations, plumbing, electric wiring and stationary heating and lighting apparatus and fixtures; also all permanent fixtures (except outside awnings and signs), stationary scales and elevators belonging to and constituting a permanent part of said building, occupied as a canning factory situated on the east quarter of section 15, in township 24, range 1, Madison county, town of Norfolk, Nebraska;" and "$3,000 on the frame husking sheds. Other concurrent insurance permitted."

The evidence discloses that the Norfolk Packing Company, the plaintiff, was the owner of a canning factory near Norfolk, Nebraska, consisting of several buildings, one of which was a three-story, composition-roof, brick building. About 50 feet away was a building referred to in the policy as "the frame husking sheds;" it being approximately 250 feet in length and 40 feet in width. It was constructed of lumber, rested upon concrete foundations, had a wooden floor upon which rested 20 husking machines weighing 1,000 to 1,500 pounds each, was boarded up on the sides for about 3 feet, then open 5 or 6 feet, and then boarded up to the roof. In this husking shed the husks were stripped from the corn, which husks, together with the cobs, were carried to the east end and outside of the husking shed by an endless belt conveyor running east and west the entire length of the building. About 6 feet east of the east end of the husking shed was a concrete

pit about 3 feet deep. In this pit was a steel structure supporting another open endless belt conveyor, which will hereafter be referred to as the "husk elevator" as a matter of convenience. This husk elevator was used to pick up the husks and cobs carried to it by the conveyor in the husking sheds, carry them to the east end of the husk elevator and dump them in piles on the ground. The husk elevator was 60 feet in length and was fastened to the floor of the concrete pit with a king-pin 12½ inches in length and 6 inches in thickness. This husk elevator was supported at its east end by a semicircular wall about 12 feet in height. Upon the wall was a one-rail track, and on the east end of the husk elevator were iron wheels which were made originally to roll on this track, causing the husk elevator to move on its radius so that husks and cobs could be distributed over this segment of a circle by simply moving it one way or the other. The evidence establishes the fact, however, that before this policy was written the husk elevator had been made rigid and stationary by means of steel cables connecting its eastern extremities with concrete "dead men" buried in the ground and by steel wedges placed under the wheels to prevent their rolling in either direction. The west wall of the concrete pit referred to supported four large timbers which ran through the full length of the husking shed. These timbers were connected to the husk elevator by a sheet-iron apron which was bolted to the timbers and to the husk elevator. This husk elevator was damaged by a windstorm, and it is for this damage that action was brought on the policy.

It is the contention of the plaintiff herein that, the policy in question being the Nebraska uniform standard form, every provision of the printed form applied equally to both of the buildings described therein, and particularly that the words of definition and description in the rider applied with equal force to "the frame husking sheds" as it did to the other building described in the policy. To this argument we cannot agree. A contract of insurance is a voluntary one and the parties thereto have a right to incorporate therein such provisions and conditions as they

see fit to adopt, provided the conditions and provisions are not in violation of law or public policy. Section 7836, Comp. St. 1922, clearly indicates that the description of the property insured is a matter of contract between the parties and that the legislature did not intend to add anything to or take anything from the descriptions and specifications of the property insured as described in the policy. This being true, whether or not the property injured was covered by the policy is purely a matter of construction of the words of description used in the insurance contract.

In this case each of the items of property insured are separate and distinct from the other and constitutes what is known as a "divisible policy." Such being the case, the policy should be considered as if there was a separate insurance contract issued on each of the two items of property insured. This leaves for our determination the question whether or not the property damaged was a part of "the frame husking sheds" described in the policy.

It will be noted that the property damaged was described as "the frame husking sheds," rather than the frame building, and is descriptive of the character, construction, purpose and use of the building insured, rather than a limitation of the risk to any particular part. The frame husking sheds were used to carry in the corn, husk the same, cut the corn from the cobs, and carry the husks and cobs from the building. That the husk elevator was a very necessary part of this operation is very apparent.

The evidence discloses that the husk elevator was attached to certain wooden beams that were the chief supports of the heavy machines inside the building. It also discloses that the conveyor running the length of the shed carried the husks and cobs to the husk elevator in question which carried them on and dumped them on the ground. This evidence clearly shows that the husk elevator was attached to the building and an integral part of the use to which the husking shed was put. The evidence also indicates that it was the intent of the insured that the property damaged was to be a permanent fixture of the building. While it is true that it could have been removed

without damage to the building, still that fact is not a controlling feature. The husk elevator did not have a common and general use but was purchased for use with the frame husking sheds. Its very nature shows that it was limited to a definite use in connection with certain manufacturing industries. The policy having been written on the premises by the agent of the defendant, the facts above mentioned, which were visible and easily observed, will be considered in determining the construction to be placed on the terms of the policy.

In holding that a track scale bought to be used with, and mainly employed in carrying on the business of, a grain elevator, to which it is visibly connected, was a fixture to such elevator, the supreme court of Iowa used the following language which we feel should be applied in this case:

"It is plain, from the record, that the land on which the elevator was placed was leased, and the elevator placed in close proximity to the railroad track, because the elevator was to be used in receiving and shipping grain over the line of road, and that, as to the cars on the track, grain was to be transported to and from the elevator. The elevator was used for the purpose of shelling corn and cleaning grain for shipment, in which case cars were unloaded into the hopper connected with the scale, and by means of conveyors taken to the building for such purposes as might be required. The entire testimony in the case shows that the scale was bought for use with the elevator, and, after being adjusted, it was mainly used for the purpose of carrying on the business of the elevator. It seems to have been as much a part of the elevator, for the purpose of its business, as the machinery in the elevator, and for such purposes as closely connected therewith. The connection of the scale to the elevator by means of the hopper frame was open, visible, and could easily be known by all." *McGorrisk v. Dwyer*, 78 Ia. 279.

For the reasons above set out, we believe that the description in the policy is fairly susceptible of the construc-

tion claimed for it by the plaintiff that it was intended to cover the property damaged.

The next contention raised by the defendant is that the trial court erred in holding that there was a waiver of proofs of loss as required by the policy. The policy of insurance contained a clause providing in substance that in the event of loss the insured shall, within 15 days, give notice of such loss in writing to the company, and within 60 days after the date of the tornado, windstorm, or cyclone render a statement to the company signed and sworn to by the insured stating the interest of the insured and all others in the property, etc. Said policy also provided that all claim for any loss or damage shall be forfeited by failure to furnish proofs of such loss or damage within the time and in the manner above provided.

The defendant contends that the failure to furnish proofs of loss sworn to by the assured bars a recovery. No proof of loss was made by the plaintiff other than the notice of the damage given to the local agent and the communication of the same to the state agent. But plaintiff insists that, under the facts shown by the evidence, the defendant waived written proofs of loss required by the policy. Whether or not there was a waiver as contended by the plaintiff is a question that must be determined by the conduct of the parties as disclosed by the evidence.

The evidence shows conclusively that the next morning after the windstorm Mr. J. W. Ransom, one of the defendant's local agents at Norfolk, Nebraska, who wrote the policy sued on, was notified of the windstorm damage by the managing agent of the plaintiff, who gave such information as he had concerning the damage. Thereafter Mr. Earl Ransom, son and partner of J. W. Ransom, immediately wrote to Mr. E. R. Perfect, the defendant's state agent at Omaha, notifying him of the loss; and within a few days thereafter the state agent went to Norfolk, and he and J. W. Ransom drove out to the canning factory and looked over the damaged property. Earl Ransom testified that the state agent told him after the inspection

that he did not believe the company was liable for the reason that the damaged property was not covered by the policy.

It appears from the evidence that Mr. Wilbur M. Derthick of Sioux City, Iowa, attorney for plaintiff, had considerable correspondence with Edward S. Foltz, acting manager of the loss department of the defendant company. In answer to a letter of December 18, 1920, Mr. Foltz on December 24, 1920, wrote to Mr. Derthick in part as follows:

"The second item under our policy is $3,000 on 'frame husking sheds.' We are sincerely of the opinion that this insurance, 'frame husking sheds,' applies specifically and only upon the shed in question, because the quoted phraseology specifically identifies a particular shed. With indulgence, we direct your attention to the fact that the insurance on 'husking shed' is not in the phraseology as the item upon the brick building, but the language specifically limits the insurance to the 'husking shed.'

"With further indulgence say we judge you have been erroneously advised as to the investigation made in the premises, because it was the American that made the investigation, which was through our state agent, Mr. E. R. Perfect of Omaha."

On January 10, 1921, Mr. Foltz again wrote Mr. Derthick in part as follows:

"This is to now advise that in consultation with Manager Sheldon, inasmuch as full facts in the premises are not before us, we have concluded to make an additional investigation, which may take a week or ten days, and on receipt of the report from our representative, we will confer with you again. Now in the matter of your personal conversation with the writer and offer of figures, etc., in the matter of settlement of the loss, I also brought to Mr. Sheldon and he said he was not in position at this time to intelligently consider the matter, but as I take it, Mr. Sheldon will take up the matter in entirety when he gets the report of the investigation he is now causing to be made."

On February 3, 1921, Mr. Foltz again wrote Mr. Derthick in part as follows:

"Our investigation disclosed in the first place there was no windstorm, cyclone or tornado on the day in question when the damage ensued. There was not a semblance of damage in the vicinity of the property in question, nor in the county in which the property is located, which establishes that there was no windstorm or storm of velocity. * * * Be further advised that our investigation disclosed that this apparatus was in no wise a part of the building in question, but was a separate distinct apparatus or machinery, and consequently our policy does not cover except on the building."

These letters contain no reference whatsoever to the failure to file proofs of loss, and considering the fact that the damage occurred on September 23, 1920, we believe the evidence and circumstances show a waiver of proofs of loss. Notice of the loss having been promptly given and the company having acted upon it and entered upon the work of inspecting the property and investigating the circumstances to the extent shown by the evidence, the insurance company cannot be permitted to escape liability because formal proof of loss was not given. In *Union Ins. Co. v. Barwick,* 36 Neb. 223, 231, Mr. Chief Justice Maxwell, speaking for the court, said: "A company may have notice from their own agent at a given point that a certain loss has occurred, and if it acts upon that information and sends an adjuster to estimate the amount of the same, etc., it is no doubt a waiver of proof." It is a well-established rule of law that if an agent or adjuster of the company assumes to act for the company in adjusting and investigating the loss and denies a liability, the company is bound by the denial, and notice and proof of loss is waived. *Farrell v. Farmers & Merchants Ins. Co.,* 84 Neb. 72; *Brown v. Firemen's Ins. Co.,* 106 Neb. 615.

In this case the defendant carried on correspondence with plaintiff's attorney long after the 60 days for making final proof had expired and not once was objection made for that reason. The evidence clearly shows that the com-

pany was previously to, as well as after, the expiration of the sixty-day period, denying liability on the grounds that there was no windstorm to cause damage, and that the property damaged was not covered by the policy. Under such circumstances the defendant has waived proofs of loss. *Omaha Fire Ins. Co. v. Dierks & White,* 43 Neb. 473; *Aetna Ins. Co. v. Simmons,* 49 Neb. 811; *Dwelling House Ins. Co. v. Brewster,* 43 Neb. 528.

The defendant further contends that the trial court erred in ignoring the provisions of the policy relating to additional insurance. The policy contained the following clause:

"If there shall be any other tornado insurance or contract of tornado insurance, whether valid or not, on the property described herein, claim upon this company shall be only for such proportion of the loss as the amount of this policy shall bear to the whole insurance."

The defendant alleges that the Phœnix Assurance Company, Limited, of London carried a $5,000 policy of insurance on the property damaged, and that the defendant company is liable, if at all, only for its *pro rata* share of the damage. The record discloses that the plaintiff sued the Phœnix Assurance Company on its policy, and that the defense set up was (1) that the property damaged was not covered by the policy, and (2) that there was no windstorm on the day the damage occurred, and (3) that proofs of loss had not been furnished as required by the policy. The reply was a general denial of the first two defenses and set up a waiver of proofs of loss as to the third. The findings of the trial court in said action were as follows: "The court finds that there is no proof sufficient to establish plaintiff's cause of action or any liability on the part of defendant to the plaintiff under said policy of insurance and that plaintiff has failed to prove its case." The issue as to whether the policy of insurance of the Phœnix Assurance Company covered the property damaged having been raised in the case of the Norfolk Packing Company v. Phœnix Assurance Company tried in the district court for Madison county, decided adversely to the plaintiff

therein, and not appealed from, shows that, as a matter of law, the policy of the Phœnix Assurance Company did not cover the property damaged. The contention of defendant that it is liable, if at all, for a *pro rata* part of the amount of its policy is without merit.

Defendant also complains that there was not sufficient evidence of the value of the property damaged to support the judgment of $3,000. After a careful examination of the evidence, we find that it was sufficient to uphold the judgment entered by the trial court.

For the reasons herein set out, the judgment is

AFFIRMED.