Lucile BOOTH, Administratrix De Bonis Non of the Estate of Ernest R. Booth, Deceased, Plaintiff,

v.

SEABOARD FIRE & MARINE INSURANCE COMPANY, a corporation, Defendant.

Civ. 02623.

United States District Court
D. Nebraska.

June 10, 1968.

James E. Schneider, Baskins, Baskins & Schneider, North Platte, Neb., for plaintiff.

Harold W. Kay and Clinton J. Gatz, Maupin, Dent, Kay, Satterfield & Gatz, North Platte, Neb., for defendant.

## MEMORANDUM

VAN PELT, District Judge.

The plaintiff is a Nebraska citizen and was duly appointed administratrix in Nebraska of the estate of Ernest R. Booth. Ernest Booth will hereinafter be referred to as the decedent. The defendant insurance company, hereinafter referred to as Seaboard, is a New York

corporation authorized to do business in Nebraska. There is a claim of jurisdictional amount. The matter is submitted on cross motions for summary judgment (Filings #12 and #14).

The complaint seeks relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. The complaint makes six different claims. Basically, however, the relief requested is the interpretation by the court of particular clauses in two insurance policies, both with Seaboard, and the entry of judgment in favor of the plaintiff for such amounts as she is entitled to, together with costs and attorneys' fees.

The facts should be stated for the purposes of these motions. The decedent was driving a tractor on U. S. Highway 30 on October 25, 1963, when he was struck from behind by a car owned by Larry Sheely and driven by George Cayson. The decedent died on October 28, 1963 from the injuries so received. The insurance on Sheely's vehicle had expired on October 14, 1963 and Cayson did not have insurance.

The tractor was owned by Gothenburg Feed Products, the decedent's employer. It was an ordinary tractor such as is normally found in agricultural pursuits and was not specially equipped. It was used by decedent's employer in connection with its alfalfa dehydrating operations. The tractor was principally used to pull machinery in the field. The decedent was employed as a mechanic and only infrequently worked in the field. In this particular instance the cutting season was over and decedent was driving the tractor solely for the purpose of transporting it from one place to another for storage for the winter.

It appears that formal written notice and a claim were not given to Seaboard until August 20, 1965, at which time notice was given to Continental Insurance Companies. Seaboard admits that all acts of and notices received by Continental are binding on Seaboard. In response to this notice of August 20, 1965

Continental sent back a letter to counsel for plaintiff which included an Automobile Accident or Loss Notice. The letter also contained the following statements: "I would like also some explanation as to why such a long delay in giving us notice. Upon receipt of this information, we will give the matter further consideration." (Filing #15, Ex. C; also in Pl. Ex. 8). The Automobile Accident or Loss Notice was returned on September 8, 1965 with a letter which gave some explanation of the delay in notifying the Continental. No further mention of improper notice was made until the answer in this case was filed. Continental proceeded to investigate the accident. On November 10, 1965 a letter was sent from Continental to plaintiff's counsel which raised the following policy defenses:

1) Denied liability under the accidental death benefits coverage because of a farm machinery exclusion;

2) Claimed a reduction of the uninsured motorist coverage by the amount of workmen's compensation payments; and

3) Made a reference to arbitration as follows: "I would like to point out and request that you read the arbitration section in connection with uninsured motorists coverage and if you have any further word in connection with this, please let me know." (Filing #15, Ex. F; part of pltf's Ex. 8). No reference was made to lack of due notice or failure to demand payment. It appears that up to this point, the subject of medical payments had not been raised by either party.

Plaintiff has received workmen's compensation payments in the amount of $13,400. The workmen's compensation carrier has renounced any claim it might have for reimbursement from proceeds of the uninsured motorists coverage.

On or about October 1, 1965 an action was commenced against Cayson and Sheely in this court. Continental was apprised of the filing of the suit and was adequately notified at each stage of

the proceedings. A default judgment was duly entered against Cayson on July 7, 1966. On September 15, 1966 the court determined the damages in that action to be $23,000.00. This action was then commenced.

The six claims made in the complaint are as follows:

First: The plaintiff seeks recovery under the uninsured motorist coverage of policy #SA84731 (hereinafter called policy #1) because of her judgment against the uninsured driver, Cayson. Damages are prayed to the extent of $20,000.00 (the limit of the policy coverage).

Second: The plaintiff seeks recovery under the uninsured motorist coverage of policy #SA84734 (hereinafter called policy #2), because of her judgment against the uninsured driver Cayson. Damages are prayed to the extent of $20,000.00 (the limit of the policy coverage).

Third: The plaintiff seeks recovery under the accidental death benefits coverage of policy #2 of the $1,000.00 amount of coverage.

Fourth: The plaintiff seeks recovery under the accidental death benefits coverage of policy #1 of the $1,000.00 amount of coverage.

Fifth: The plaintiff seeks the recovery of $482.83 of medical expense under the medical expense coverage of policy #1.

Sixth: The plaintiff seeks the recovery of $482.83 of medical expense under the medical expense coverage of policy #2.

The plaintiff also asks for costs and attorney's fees on the above claims.

The answer to the complaint admits the death of the decedent, that the policies were in force, the diversity of the parties, and at the pretrial, the capacity of the plaintiff as administratrix, the amount of the judgment against Cayson (but not the validity thereof) and that the decedent was driving a tractor at the time of the accident.

The defendant answers each of the six above mentioned claims as follows:

First: Jurisdictional amount is denied. Seaboard also denies that the plaintiff is entitled to recover under the policy and claims the following policy defenses: a) The workmen's compensation benefits received by the plaintiff constitute both a set-off against the amount of liability under the policy and a defense to any liability under the policy; (b) claims that due notice was not given to the company; and (c) claims that no formal demand for payment prior to suit was made. This defense is reiterated in the separate defenses to each of the six claims.

Second: Seaboard claims that under the terms of the policies, the coverage in policy #2 is excess above that in policy #1.

Third: Seaboard makes the claims: a) denies that conditions precedent have been satisfied; and b) claims that plaintiff is barred from recovery by the specific exemption relating to deaths arising from "the operation of farm machinery."

Fourth: Makes the claims of "Third" immediately preceding referring to policy #1.

Fifth: Seaboard, a) denies for lack of knowledge the amounts of the medical bills; b) denies that all conditions precedent have been performed; and c) affirmatively claims that plaintiff is not entitled to medical benefits because: 1. there is an exclusion for injuries arising from the operation of farm machinery; and 2. there is an "other insurance" exclusion which covers workman's compensation.

Sixth: Seaboard makes the claims of "Fifth" immediately preceding and also claims that policy #2 is excess insurance over policy #1.

The issues raised by the pleadings and argued in the briefs are as follows:

1) Whether the jurisdictional amount is satisfied here.

2) Whether the uninsured motorist coverage issues must be settled by arbitration.

3) Whether due notice was given to the company.

4) If the three issues just stated are decided in plaintiff's favor, the following questions are to be decided:

A) As to the uninsured motorist coverage (first and second claims):

 I) Are the limits of liability of the two policies to be aggregated or is one primary and the other subject to the "excess-escape" clause:

 II) In adjudging recovery, must the amount paid under the workmen's compensation law be subtracted and the insurance pay only the remainder;

 III) If the workmen's compensation benefits are to be subtracted are they to be subtracted from the limits of liability of the company under one policy ($20,000.00) or the amount of the judgment obtained against the uninsured motorist ($23,000.00); and

 IV) Is all liability of Seaboard relieved by the workmen's compensation payments?

B) As to accidental death benefits (third and fourth claims) does the policy exclusion for accidents "arising out of the operation of farm machinery" constitute a complete defense to liability?

C) As to medical coverage (fifth and sixth claims):

 I) Does the policy exclusion for accidents "arising out of the operation of farm machinery" constitute a complete defense to liability;

 II) Can plaintiff collect for medical bills in light of the workmen's compensation payment; and

 III) Can plaintiff collect under both policies or only under one as primary and the other as "excess" insurance?

In reaching its decision this court will consider and decide the issues as they have been outlined above. This being a diversity case, Nebraska law is applicable.

## 1. JURISDICTIONAL AMOUNT:

■ Defendant claims that the jurisdictional amount does not exist in this case. Plaintiff asks judgment in excess of $10,000. The judgment of this court hereafter set forth will grant relief to the plaintiff in excess of $10,000.

It is clear that the jurisdictional amount is present.

## 2. ARBITRATION:

This issue raises the necessity of arbitration on the uninsured motorist coverage. However, the contract provision which requires that plaintiff cannot bring suit against the uninsured motorist without the written permission of the company is also involved in this issue (Exclusions, Part (a); p. 11 of Pl. Ex. 10).

It would appear that the no suit without permission clause is an attempt by the company to bolster its arbitration provision and must abide the same fate as arbitration. If the arbitration provision is waived or is unenforceable, the no suit without written permission clause should also be waived or held unenforceable. To hold otherwise would have the effect of forcing arbitration.

■ There seems little doubt under Nebraska law that the arbitration provisions and no suit without written permission clauses are contrary both to public policy and to the Nebraska Constitution, insofar as they operate to force arbitration on an unwilling party. Phoenix Insurance Company of Hartford v. Zlotky, 66 Neb. 584, 586, 92 N.W. 736 (1895); German-American Insurance 254, 266, 86 N.W. 1085 (1901); Home Fire Insurance Co. of Omaha v. Kennedy, 47 Neb. 138, 66 N.W. 278 (1896); Insurance Company of North America v. Bachler, 44 Neb. 549, 62 N.W. 911 (1895); German-American Insurance

Co. v. Etherton, 25 Neb. 505, 41 N.W. 406 (1889).

Seaboard however claims that the federal arbitration act, 9 U.S.C. § 1 et seq. applies. The federal act applies to contracts "evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract * * *." 9 U.S.C. § 2. Seaboard claims that insurance transactions which extend across state lines are declared to be commerce by United States v. South Eastern Underwriters Association, 322 U.S. 533, 64 S.Ct. 1162, 88 L. Ed. 1440 (1944).

In the *South Eastern Underwriters Association case*, supra, the Court said, at pp. 546–547, 64 S.Ct. at p. 1170: "We may grant that a contract of insurance, considered as a thing apart from negotiation and execution, does not itself constitute interstate commerce. Cf. Hall v. Geiger-Jones Co., 242 U.S. 539, 557, 558, 37 S.Ct. 217, 223, 224, 61 L.Ed. 480, L.R.A.1917F, 514 Ann.Cas.1917C, 643." And further, on page 547, 64 S.Ct. on page 1170: "In short, a nationwide business is not deprived of its interstate character merely because it is built upon sales contracts which are local in nature." It is the opinion of this court that the *South Eastern Underwriters Association* case does not hold that individual insurance contracts are commerce.

■■ Neither the briefs nor the research of this court has disclosed any case where the federal act has been held applicable to an insurance contract. This court is of the opinion that the federal arbitration act is inapplicable to this case and that, under Nebraska law, the arbitration provisions and the no suit without written permission clauses of policies #1 and #2 are unenforceable.

■ However, this court is of the opinion that, even if the federal arbitration act were applicable, the defendant has waived its right to arbitration. The policy would appear to require a written demand by one of the parties before arbitration is required (P. 12 of pltf's Ex.

10). No written demand for arbitration has ever been made by either party, unless the answer filed in this case can be considered such a demand. And even if the answer is a demand, the demand should have been made over one year previous to the filing of the answer, at the time when the suit against the uninsured motorist was commenced. At that stage it was apparent that plaintiff was not going to consent to arbitration and was ignoring the no suit without written permission clause of the contract. Seaboard, having full knowledge of the proceedings, allowed the plaintiff to bring suit against the uninsured motorist, prosecute that suit to judgment, and allowed the plaintiff to file this action before making any statement which could be argued to be a demand for arbitration. This is a waiver of the right to arbitration. 45 C.J.S. Insurance § 1132, p. 1375 and § 1133, p. 1377; 1967 Ins. Coun.Jour. 57, 64–65 (Jan.1967).

Even if the federal arbitration act were applicable, Seaboard should have made a demand for arbitration as required by the policy. If plaintiff had failed to arbitrate, Seaboard could have brought suit under the provisions of 9 U.S.C. § 4 to force arbitration. This could have been done more than a year before the answer was filed. Instead the defendant elected to wait until the answer in this case was filed to raise the issue of arbitration.

Even if the federal arbitration act is applicable, defendant may not now, at this late stage, require plaintiff to arbitrate.

3. DUE NOTICE:

The parties to this case have agreed through correspondence with the court to submit the issue of actual notice to the court without a jury. A hearing was held at which the wife, son and employer of the decedent testified. The local representative of Seaboard was deceased at the time of the hearing. It appears from the evidence that was produced at the hearing that the local representative of Seaboard was informed

of the accident within a few days after the accident occurred. The wife and son of decedent did not find the policies for a considerable time after the accident, probably in the summer of 1965. However, three to five weeks after the accident decedent's son inquired of Gordon Jones, Seaboard's local representative, whether there was anything in the policies upon which the estate could collect. Jones said there was nothing. Decedent's son then held a similar discussion with Mr. Jones about six months after the accident. By this time the carrier which had been listed by Cayson and Sheely had denied coverage and the son informed Mr. Jones of the fact that the driver and owner of the other car were uninsured. Mr. Jones repeated his statement that there was no coverage which could benefit the estate.

It is the opinion of this court that Seaboard, through its local representative, was put on notice by the actions and requests of the decedent's son of the potential claims against it. Formal notice beyond that given to Jones by decedent's son was surely delayed by the affirmative actions of Jones in telling the son that there was no coverage which would benefit the estate. In this situation Jones must be considered acting in the interests of the company rather than the decedent. § 44–329 Neb.Rev. Stat.

█ It is the conclusion of this court that sufficient notice was given to Seaboard within a reasonable time after the accident and after the discovery that Cayson and Sheely were uninsured. See George v. Aetna Casualty & Surety Co., 121 Neb. 647, 238 N.W. 36, 38 (1931).

█ However, even if due notice had not been given *Seaboard* has waived the right to defend on that basis. In the first letter from Continental to plaintiff's counsel, Continental demanded an explanation of why they had not been notified earlier. An explanation was given in subsequent correspondence. The issue of due notice was not again mentioned until the answer in this case was filed. Continental proceeded to investigate the accident. They then sent a letter to plaintiff's counsel raising policy defenses to liability under the various coverages. Due notice was not mentioned as one of these defenses.

In Morgenstern v. Insurance Co. of North America, 89 Neb. 459, 131 N.W. 969, 971 (1911) the court said: "[T]he more recent authorities hold that the company may, by its conduct, waive proof of loss when it has notice of the breach of such condition; that notice to the agent is notice to the company, and such waiver need not be in writing."

In Brown v. Security Mut. Life Ins. Co., 150 Neb. 811, 36 N.W.2d 251, 255 (1949), the court said: "It has long been the rule in this state that ' "Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration. He is not permitted thus to mend his hold." ' "

The court said, in St. Paul Fire & Marine Ins. Co. v. Gotthelf, 35 Neb. 351, 53 N.W. 137, 138 (1892): "[P]rovisions [concerning notice and proofs of loss within a certain time] in a policy of insurance for forfeiture will be held to have been waived by the insurer when it is informed of the fact by reason of which the forfeiture is claimed, but thereafter continues to treat the contract as binding, and induces the insured to act in that belief." In the *Gotthelf* case, the company had sent appraisers in to determine the loss. At trial the company claimed that the appraisers had been sent in to arbitrate the dispute and their award was binding on plaintiff. The jury resolved this claim in favor of the insured. However, the court held that the very raising of the defense was a waiver of proof of loss.

The court has also stated: "It is a well-established rule of law that if an agent or adjuster of the company assumes to act for the company in adusting and investigating the loss and denies

a liability, the company is bound by the denial, and notice and proof of loss is waived." Norfolk Packing Co. v. American Insurance Co., 120 Neb. 19, 231 N.W. 148, 151 (1930). See also 45 C.J.S. Insurance § 982(6), p. 1198 et seq. and particularly pp. 1202–1213.

Seaboard's actions prevent it from now claiming any defense it might have of lack of due notice.

## 4. OTHER POLICY DEFENSES:

### a. UNINSURED MOTORIST COVERAGE:

At the time these motions were submitted the four questions listed above concerning the uninsured motorist issues were disputed questions of law upon which the Nebraska Supreme Court had never ruled. However, on February 2, 1968 the Nebraska court decided Stephens v. Allied Mutual Insurance Company, 182 Neb. 562, 156 N.W.2d 133 (1968). In that case the court said:

"The general rule is that an insurer may not limit its liability under uninsured motorist coverage by setoffs or limitations through 'other insurance,' excess insurance, or medical payment reduction clauses, and this is true even when the setoff for the reduction is claimed with respect to a separate, independent policy of insurance (workmen's compensation) or other insured motorist coverage. And this is true because the insured is entitled to recover the same amount he would have recovered if the offending motorist had maintained liability insurance." id at 571, 156 N.W.2d at 139.

In this case the question is presented as to the applicability of Stephens above the statutory minimum. In Stephens the coverage was substantially less than the judgment, being for $10,000.00, the statutory minimum. In this case the coverage on each policy is $20,000.00, well in excess of the statutory minimum, and when the limits of the two policies are totalled as Stephens would seem to require, the coverage far exceeds the

judgment of plaintiff against the uninsured motorist.

An argument can be made that the policy provisions condemned by Stephens are only void insofar as they might have the effect of decreasing the coverage below the statutory minimum on each policy, but are valid as to coverage carried in excess of that amount. The statutory minimum as it would apply to this accident is $10,000.00. Although part of the court's opinion in Stephens might indicate that such a result could be reached, this court is unwilling to make such a distinction in view of the broad rule laid down by the court in that opinion that "an insurer may not limit its liability under uninsured motorist coverage by setoffs or limitations." (182 Neb. at 571, 156 N.W.2d at 139).

 It is the conclusion of this court that Seaboard may not permissibly decrease its liability under either policy by means of its excess-escape clause (Pl. Ex. 9 & 10, p. 19, Conditions, subheading 4), nor may it claim a set-off or reduction against the limits of liability because of workmen's compensation payments under prevailing Nebraska law (Pl. Ex. 9 & 10, p. 11, Exclusions, subhead (b) and Limit of Liability, subhead (b) (3)).

However, although Seaboard may not permissibly decrease its limits of liability, as above noted, this does not mean of necessity that plaintiff is entitled to the full amount of her judgment from Seaboard. As was said by the Nebraska court in Stephens and previously quoted in this opinion, "[T]he insured is entitled to recover the same amount he would have recovered if the offending motorist had maintained liability insurance."

If plaintiff's damages here had been less than the face of one of the policies, she would not equitably be entitled to claim the full amount of the face of one of the policies, nor would she be able to obtain the full amount of her loss under each of the policies. To allow such a result would be to give the plaintiff a

windfall at the expense of Seaboard. Such a result was surely not contemplated by the parties at the time this contract was made.

If Cayson or Sheely had been insured, the plaintiff would have been entitled to receive from them $23,000.00, the amount of her judgment. Out of this amount she would have had to repay the workmen's compensation benefits, § 48–118, Neb.Rev.Stat., 1967 Supp. That is all she would have been entitled to receive.

The inequity can be further seen by considering the subrogation rights of the compensation carrier and Seaboard. If the compensation carrier is not entitled to claim reimbursement from the funds paid to the plaintiff by Seaboard, it would be entitled to claim subrogation to the rights of the plaintiff in the judgment that plaintiff obtained against Cayson. § 48–118 Neb.Rev.Stat.1967 Supp. Seaboard would also appear to be entitled to subrogation to the rights of the plaintiff in the judgment against Cayson in the amount that Seaboard pays to plaintiff. Pl. Ex. 9 & 10, pp. 12–13; United Services Automobile Association v. Hills, 172 Neb. 128, 109 N. W.2d 174 (1961). The payments of the compensation carrier, and therefore its subrogation rights, are in the amount of $13,400.00. If Seaboard is required to pay $23,000.00, there would be subrogation claims of $36,400.00 made against Cayson, but he would only be liable up to the amount of the judgment, $23,000.-00. Even if Cayson should become able, at some point in time, to pay the judgment, part of the claim of at least one of the insurance companies would of necessity go unsatisfied.

This question was not reached in the Stephens case. In that case the plaintiff's judgment was for $50,000.00, uninsured motorist coverage was for $10,-000.00, and medical benefits coverage was $1,000.00. The maximum plaintiff could recover under all of the available coverages was $11,000.00 to apply against a $50,000.00 judgment. It is apparent that there was no possibility of a windfall to the plaintiff in the Stephens case.

It is the conclusion of the court that, while Seaboard may not, under Nebraska law, decrease the limits of liability of its policies by various types of set-offs or reductions, this court must, in equity and fairness to the defendant and to prevent the plaintiff from receiving a windfall, consider payments made to the plaintiff in determining the loss plaintiff has sustained for which Seaboard is liable. To do otherwise is inequitable and unjust. However, any payments which the plaintiff must repay out of the proceeds of the uninsured motorist coverage should not be considered as reducing plaintiff's loss. This result will allow "the insured * * * to recover the same amount he would have recovered if the offending motorist had maintained liability insurance" and yet will not allow the plaintiff a windfall in excess of her actual loss.

The question which this court must now decide is whether the workmen's compensation carrier can claim reimbursement from the proceeds of the uninsured motorist coverage or is limited to any payments made by the tort-feasor or someone on his behalf. If the compensation carrier is entitled to recovery from the uninsured motorist coverage then the compensation payments should not be considered in arriving at the loss of the plaintiff for which Seabord is liable. If on the other hand the compensation carrier must look only to the tort-feasor or someone acting in his behalf, then this court should consider those payments in determining the loss suffered by the plaintiff for which Seaboard must pay.

The statute which grants subrogation rights to the workmen's compensation carrier provides in material part as follows: "Where a third person is liable to the employee or to the dependents, for the injury or death, the employer shall be subrogated to the right of the em-

ployee or to the dependents against such third person * * *."

The precise question of whether this provision grants a compensation carrier subrogation rights against uninsured motorist coverage benefits has never been decided in Nebraska. However, in Bronder v. Otis Elevator Co., 121 Neb. 581, 237 N.W. 671, 673 (1931), the court has said: "Under the Workmen's Compensation Law, reimbursement for the full amount of compensation properly paid by employer to employee's dependent, with the employer's expenses for making recovery of damages to that extent *from a third person whose negligence caused the death of the employee,* is the measure of the employer's statutory right to subrogation." (Emphasis added) In Danner v. Walters, 154 Neb. 506, 48 N.W.2d 635, 642 (1951), the court said: "Section 48–118, R.S.1943, has been held to be for the benefit of the employer, so that he might recover from a third party, who negligently injured his employee, the amount he was required to pay by the compensation statute."

It would appear to this court from the above statements that the policy of the statute was to allow subrogation to the employer or its carrier against the negligent third person or someone acting in his behalf, but not against the independent contractual rights which the employee might have against an insurance company.

In Horne v. Superior Life Insurance Company, 203 Va. 282, 123 S.E.2d 401 (1962), the exact question considered here was before the court. At p. 403, the following quotation from the Virginia Workmen's Compensation law is found:

" 'The making of a lawful claim against an employer for compensation under this Act [Workmen's Compensation] for the injury or death of his employee shall operate as an assignment to the employer of any right to recover damages which the injured employee or his personal representa-tive or other person may have against any other party for such injury or death, and such employer shall be subrogated to any such right and may enforce, in his own name or in the name of the injured employee or his personal representative, the legal liability of such other party. * * *' "

The court goes on, at p. 404, to say:

"It is not the purpose of the uninsured motorist law to provide coverage for the uninsured vehicle, but its object is to afford the insured additional protection in event of an accident. Here, Aetna does not stand in the shoes of Washington, the uninsured motorist. Its policy does not insure Washington against liability. It insures Mrs. Horne and others protected under the policy against inadequate compensation. Aetna's liability to its insured is contractual, even though it is based upon the contingency of a third party's tort liability, and Horne's employer, Superior, does not become a third party beneficiary under the insurance contract. * * * Neither Superior nor its compensation carrier acquired any more rights under Mrs. Horne's automobile liability policy than they would have acquired under a policy issued the insured providing for health and accident benefits. Certainly the Workmen's Compensation Act does not contemplate that the employer can be subrogated to the rights of the insured in such a policy."

In South Carolina, a similar case arose involving the claim of subrogation by a collision insurance carrier on a motor vehicle against an uninsured motorist carrier. In refusing subrogation, the court said:

"Subrogation is an equitable right and is available only where the equities of the party asserting it are superior to those of the party against whom it is claimed. [Citation omitted] Its purpose is to require the ultimate discharge of a debt by the person who in equity and good conscience

ought to pay it. [Citations omitted] An action by an insurer who has paid a covered loss against a person whose tortious conduct caused the injury presents a clear case for subrogation. [Citation omitted] On the other hand, an insurer, on payment of a covered loss, has no right of recovery against a third person merely upon proof that the insured could have recovered from such person." Motors Insurance Corp. v. Surety Insurance Co., 243 S.C. 487, 134 S.E.2d 631, 632 (1964).

And further, on the same page, the court said:

"The purpose of the Act was to relieve insured motorists, within specified limits, of the risk of injury from the tortious conduct of financially irresponsible, uninsured motorists. [Citations omitted] Nothing in the terms of the Act indicates an intention to relieve other insurers of primary responsibility for their own contractual obligations or to benefit them in any way."

In 1967 Ins. Counsel J., 57, Donaldson, Uninsured Motorist Coverage, at p. 74, the author reaches the following conclusion: "What is subrogated to the compensation carrier is the claimant's right against the uninsured motorist and not his rights, if any, under the Uninsured Motorist Coverage."

■ The above authority leads this court to the conclusion that under Nebraska law, the Workmen's Compensation carrier would not be entitled to seek reimbursement from the uninsured motorist coverage payments, but would be entitled only to subrogation against the uninsured motorist. In this conclusion, the compensation carrier in this case appears to concur. Ex. I of Pl. Ex. 8 is a letter from the compensation carrier, renouncing any rights it might have to recovery from the uninsured motorist coverage benefits. In that letter is found the following statement: "In reply to your letter of January 12, we do not have any right to recovery under the

Uninsured Motorist Coverage, and are willing to waive our claim against such Uninsured Motorist Coverage as we do not believe that we are entitled to participate for recovery from that source."

It is the decision of this court that the workmen's compensation benefits paid to plaintiff must be taken into consideration in determining the loss plaintiff has sustained for which Seaboard is liable. The judgment against the uninsured motorist was for $23,000.00. The amount of workmen's compensation which has or will be paid is $13,400.00. Thus the only loss which plaintiff has sustained because the tort-feasor was uninsured is the difference, or $9,600.00. Allowing her to collect this amount puts her in the same position she would have been in if the uninsured motorist had carried insurance sufficient to pay the entire judgment.

b. ACCIDENTAL DEATH BENEFITS:

Each of the policies involved in this litigation provides accidental death coverage in the amount of $1,000.00. This coverage is found at p. 3 of Pl. Exhibits 9 and 10 and provides in substance that, if death occurs solely from bodily injury caused by an accident and sustained by the insured through being struck by an automobile and within 90 days of the accident, then the company will pay the amount listed on the face of the policy. Seaboard does not contend that the above requirements have not been met. It does contend, however, that there is an exemption contained in the policy which does apply to this case.

The exemptions are found on pp. 6 and 7 of Pl. Ex. 9 and 10. The one material here is as follows: "This policy does not apply: Under the Liability, Medical Expense and Accidental Death Benefit Coverages, * * * (f) to bodily injury or property damage *arising out of the operation of farm machinery* * * *." (Emph. added.)

It is admitted that plaintiff's decedent was driving a tractor of the type known

as a farm tractor, down the highway at the time he was struck by the uninsured motorist. The question is whether this constitutes an accident arising out of the operation of farm machinery.

 The question presented here is exceptionally difficult from the standpoint that the research of the parties and of this court reveals no reported case in which the exemption here at issue has been considered. There are several general rules of interpretation of insurance contracts in Nebraska, however, which are of benefit in reaching a decision on this issue. It appears to be a general rule in Nebraska that where an insurance contract is susceptible of two or more interpretations, the one most favorable to the insured will be adopted. All doubts or ambiguity in language is resolved against the insurer. Waak v. National Bankers Life Ins. Co., 180 Neb. 129, 141 N.W.2d 454 (1966); Kent v. Dairyland Mutual Ins. Co., 177 Neb. 709, 131 N.W.2d 146 (1964); Beister v. John Hancock Mut. Life Ins. Co., 356 F.2d 634 (8 Cir. 1966); Lonsdale v. Union Ins. Co., 167 Neb. 56, 91 N.W.2d 245 (1958). Also, terms used in an insurance policy are to be given their plain ordinary meaning. Waak v. National Bankers Life Ins. Co., supra; Garrelts v. Department of Motor Vehicles, 176 Neb. 220, 125 N.W.2d 678 (1964); Mills v. Aetna Ins. Co., 168 Neb. 612, 96 N.W.2d 721 (1959). The court should not adopt a narrow and technical construction which will deprive an insured of protection unless clearly required. Otteman v. Interstate Fire & Casualty Co., 172 Neb. 574, 111 N.W.2d 97, 89 A.L.R.2d 1182 (1961); O'Neil v. Union Nat. Life Ins. Co., 162 Neb. 284, 75 N.W.2d 739 (1956); Ford Hospital v. Fidelity & Cas. Co. of New York, 106 Neb. 311, 183 N.W. 656 (1921); Springfield Fire & Marine Ins. Co. v. McLimans, 28 Neb. 846, 45 N.W. 171 (1890). Where the insuring clause of an insurance policy clearly covers a risk, and a subsequent limiting clause does not clearly exclude it, such risk will be deemed covered by the policy. Updike

Ins. Co. v. Employers Liability Assur. Corp., Limited, of London, England, 131 Neb. 745, 270 N.W. 107 (1936).

In this case the accident clearly comes within the accidental death coverage of the policy. If it is not *clearly* excluded by the exemption at issue here, then plaintiff is entitled to claim the benefits of the coverage. All ambiguities and doubts are to be resolved against the insurer.

In National Union Fire Ins. Co. of Pittsburgh, Pa. v. Bruecks, 179 Neb. 642, 139 N.W.2d 821 (1966), the court was considering the term: "arising out of the use of a vehicle." The court said:

"It seems patent, however, that some causal relation might exist between the injury and the use of the vehicle to come within the ambit of 'arising out of the use of a vehicle.' Many courts have found a causal relation to exist if the use was connected with the accident or the creation of a condition that caused the accident. * * * To put it another way, we must determine whether the fact that Scott Campbell was riding in the automobile at the time of the accident, making the automobile the situs of the accident, constitutes the accident one 'arising out of the use of' the automobile, or if not, whether it constitutes the creation of a condition that caused the accident within the terms of the policy. * * * The accident could just as readily have happened in the Bruecks' living room if Scott Campbell had carried the gun into the Bruecks' home." (139 N.W.2d 826).

And further on the same page: "The words 'arising out of the use' are very broad, general, and comprehensive terms, and are ordinarily understood to mean originating from, growing out of, or flowing from."

And on p. 827: "The contracting parties plainly contemplated an accident immediately identifiable with the ownership, maintenance, or use of the vehicle. It does not appear to us, however, that

the occurrence here will fit the plain, ordinary meaning of those categories within any reasonable interpretation of them." The occurrence in question was a gun accidently discharging in a car while the car was in motion.

It should also be remembered, however, that *Bruecks* was a case dealing with an insuring clause rather than an exemption clause, and thus any ambiguities would be construed or doubts resolved in favor of broad coverage or in favor of the insured.

In Allen v. Travelers Indemnity Co., 108 Vt. 317, 187 A. 512 (1936), the court was considering the term "arising out of the operation of" as used in an exclusionary clause. The court said in that case: "No precise definition of the phrase 'arising out of the operation' of a public garage or automobile repair shop can be attempted. It all depends upon the circumstances of the particular case, the nature of the transaction, its connection with the business, and whether it can be said to be a natural and necessary incident or consequence of the operation, though not foreseen or expected." p. 514.)

The court's research has disclosed three cases where exemptions for agricultural endeavors were involved. United Fire & Casualty Co. v. Mras, 243 Iowa 1342, 55 N.W.2d 180 (1952) [Exclusion while "engaged in custom farming"]; Harding v. Industrial Commission of Utah, 83 Utah 376, 28 P.2d 182, 91 A.L.R. 1523 (1934) [The apparent language of the exclusion here, although not quoted by the court, was "engaged in agricultural occupation"]; and Maryland Casualty Co. v. Industrial Accident Commission, 178 Cal. 491, 173 P. 993 (1918) ["excluding the operation of farm machinery"]. Because of the variance of facts and language used, the *Mras* and *Maryland Casualty* cases are of little benefit in deciding the present one.

In the *Harding* case, however, the facts are somewhat analogous to those in this case, although the language of the exemption does vary from that used here. In *Harding* the court said:

"Hauling hay to be fed the horses necessarily used in connection with the brick and tile manufacturing business is fairly incidental to the business or occupation of the employer. True it may also be incidental to farming operations, depending on the circumstances. This plaintiff was loading and hauling hay. He was a teamster. The hay was already grown, cut, and harvested. Had he been hauling bailed [sic] hay from a hay and grain store to the brick plant for use there and was injured by falling off the load, he certainly could not be said to have been engaged in agricultural employment at the time. So, likewise, if he were hauling hay from the field of another at the request of his employer who had purchased the hay in the field or stack." 28 P.2d at 185.

In this case the decedent was driving a tractor which was used regularly by his employer in its alfalfa dehydrating business. He was a mechanic and only infrequently drove a tractor. In this particular instance the cutting season was over, decedent had not been participating in any agricultural endeavor with the tractor and was not intending to do so upon his arrival at his destination. He was merely driving the tractor from one place to another for storage for the winter.

In 7 Appleman, Insurance Law & Practice, § 4317 is found a discussion of the terms "arising out of the operation, maintenance or use" of a motor vehicle. At p. 146 is found the following: "Accordingly, three rather interesting rules have been set up to determine the insurer's liability: 1. The accident must have arisen out of the inherent nature of the automobile, as such; 2. The accident must have arisen within the natural territorial limits of an automobile and the actual use, loading or unloading must not have terminated; 3. The automobile must not merely contribute to cause the

condition which produces the injury, but must, itself, produce the injury."

██ From the above authority it can be seen that many criteria are used in interpreting a phrase such as "arising out of the operation of" a vehicle. Upon a consideration of the issue, this court is of the opinion that the exemption in question here does not clearly exclude the accident in this case from coverage and therefore under the *Updike* case, the accident must be deemed to be covered. The court reaches this conclusion on two grounds: first, that it does not believe that decedent here was operating "farm machinery" within the terms of the exemption and second, that it does not believe that the accident arose out of the operation of the tractor even if it were to be deemed farm machinery.

The tractor in question here was of a type commonly used for farm work. However, decedent's employer was not a farmer nor engaged in farming. Webster's Seventh New Collegiate Dictionary defines "farmer" as "2: a person who cultivates land or crops or raises livestock." (p. 302). "[F]arming" is defined as "the practice of agriculture." (p. 302). "[A]griculture" is defined as "the science or art of cultivating the soil, producing crops, and raising livestock." (p. 19). Decedent's employer did not cultivate the soil, produce crops or raise livestock. Rather it took a crop produced by a farmer and processed it in its dehydrating plant.

Thus decedent's employer would be better typified as engaging in an industrial or commercial pursuit rather than in farming. Similarly, the tractor would appear to be more a piece of industrial or commercial machinery than farm machinery.

It could perhaps be argued that a tractor of this type is always a piece of farm machinery, no matter what it is used for. Such a result would mean that tractors which are used entirely for construction purposes or for scooping snow in the winter would be farm ma-

chinery even though they were never used on a farm or in conjunction with farming operations. On the other hand, caterpillar type tractors and other types of machinery which are normally used in other pursuits but are sometimes seen on a farm, could not be typified as farm machinery under this theory, when they are being used on a farm. This court is inclined to believe that the use of the piece of machinery plays a controlling role in determining whether it is a piece of farm machinery or not.

Thus, in this court's opinion, the overall use of the tractor indicates that it could be classified more readily as industrial machinery than farm machinery. In addition, however, the use of the tractor at the time the collision occurred would appear to make the tractor something other than farm machinery at that time. The decedent was only driving it for transportation from one place to another. He did not normally nor was he intending in this particular instance to do any farm work with the tractor. Had he been towing the tractor or had he placed it on a truck and been hauling it, it would not have been the operation of farm machinery. Similarly, here the court is of the opinion that the tractor was only being used as a means of locomotion to move from one place to another and was not being used as a piece of farm machinery.

██ Even assuming, however, that the tractor should be considered farm machinery within this exclusion, this court is of the opinion that this accident did not arise out of that operation. To paraphrase the words of National Union Fire Ins. Co. of Pittsburgh, Pa. v. Bruecks, supra, this accident originated from, grew out of and flowed from the negligence of the uninsured motorist in handling his vehicle. This court is unable to see how it originated from, grew out of or flowed from the operation of the tractor. Decedent was where he had a lawful right to be. There is no claim here that he was negligent. There is no claim that there was something about

934

the way in which the tractor was constructed which caused the accident, such as unusual protrusion from the tractor. True, the tractor was probably being operated more slowly than the general flow of traffic, thus necessitating the overtaking vehicle of the uninsured motorist to either pass or reduce his speed. There is no indication in this case that the motorist could not have done either one of these things. He did not do either in this case and therefore was negligent. But how does this arise out of the operation of the tractor?

In the *Bruecks* case, the court appeared to consider it as important that the accident could have just as readily have happened in the Bruecks' living room. Here the accident could have just as readily have occurred if decedent had been driving a truck hauling or towing the tractor at a reasonably slow rate of speed. Or it could possibly have occurred if decedent had been walking, riding a bicycle or driving a car slowly down the road. The accident was proximately caused by the negligence of the uninsured motorist. The only condition which was supplied by the operation of the tractor was that decedent was at a specific place and traveling at such a rate of speed that the uninsured motorist was required to either reduce speed or pass the decedent. Such a condition could have been fulfilled by many other means of locomotion besides a tractor.

Also, in using the criteria quoted earlier in this opinion for Appleman, this court is of the opinon that 1) the accident did not arise out of the inherent nature of a tractor; 2) the accident did not arise within the normal territorial limits of a tractor; and 3) the tractor did not of itself produce the injury.

In summary, this court is of the opinion that at the time of the accident decedent was not operating farm machinery and that, even if he was, the accident did not arise out of the operation of farm machinery.

Therefore, it is the holding of the court that the accident is clearly within the coverage of the policy and is not clearly excluded by any exemption or exclusion. The plaintiff is entitled to the proceeds of this coverage.

c. MEDICAL BENEFITS COVERAGE:

(1) Is recovery excluded by the exemption for an accident "arising out of the operation of farm machinery?"

The exemption in question here is the same exemption which was considered under the accidental death benefits coverage. In accord with the decision reached there, this court is of the opinion that the particular exemption is inapplicable in this case.

(2) Does the workmen's compensation payments for medical bills provide a complete defense to an action under this coverage?

The exclusion applicable to this coverage is found on pp. 6 and 7 of plaintiff's Exhibits 9 and 10, and provides as follows: "This policy does not apply: * * * Under the Medical Expense Coverage, (1) to the extent that any medical expense is paid or payable to or on behalf of the injured person under the provisions of any * * * (iv) workmen's compensation or disability benefits law or any similar law; * * *"

A similar issue was raised with regard to the uninsured motorist coverage. However, this court is of the opinion that even though this exemption is not valid insofar as it applies to uninsured motorist coverage, it is valid with regard to Medical Expense Coverage.

The general law of Nebraska would seem to be: "[I]n the absence of statutory provisions to the contrary, insurance companies have the same right as individuals to limit their liability and to impose whatever conditions they please upon their obligations, not inconsistent with public policy. If plainly expressed, insurers are entitled to have such exceptions and limitations construed and en-

forced as expressed." Lonsdale v. Union Insurance Company, 167 Neb. 56, 91 N.W.2d 245, 248 (1958).

There is no statute which specifically applies to this type of coverage. Stephens v. Allied Mutual Insurance Company, supra, held this type of policy exclusion invalid in Nebraska, insofar as it applies to uninsured motorist coverage. However, it did not hold the exclusion invalid in all cases under different types of coverages.

The Nebraska courts have allowed other types of policy exclusions or limitations in other cases. Protective Fire and Casualty Company v. Cornelius, 176 Neb. 75, 125 N.W.2d 179 (1963); Turpin v. Standard Reliance Insurance Co. (Mutual) 169 Neb. 233, 99 N.W.2d 26 (1959); Farm Bureau Ins. Co. of Neb. v. Allied Mutual Insurance Company, 180 Neb. 555, 143 N.W.2d 912 (1966). (All three concerned "other" or "excess" insurance clauses.)

This court finds no public policy in Nebraska which prohibits this exclusion under this type of coverage. Therefore, it is the opinion of the court that this exclusion is valid and that plaintiff is not entitled to collect anything under the medical benefits coverage of either policy because the medical bills have already been paid by the workmen's compensation carrier.

(3) This question concerns the validity of the excess insurance provisions of this coverage (Pl. Ex. 9 and 10, p. 7, part (1) (i)) but is made moot by the decision of the court with regard to the workmen's compensation exclusion of this coverage. However, this court feels that the authorities cited in the discussion of the workmen's compensation exclusion of this coverage even more strongly support the validity of this limitation.

Conclusion:

It is the conclusion of the court that the plaintiff is entitled to recover the following under the various policy provisions:

(1) Uninsured Motorist: (first and second causes of action). The plaintiff is entitled to recover a total under these two causes of action equal to the loss plaintiff has sustained by reason of the fact that the motorist was uninsured which is to be determined by subtracting the amount of workmen's compensation paid or payable from the judgment obtained against the uninsured motorist. (Since the two policies were both issued by the same company, no question of what amount should be paid by each of the two policies is here presented.)

(2) Accidental Death Benefits: (third and fourth causes of action). The plaintiff is entitled to recover the full amount of the benefits under each of the policies.

(3) Medical Benefits Coverage: (fifth and sixth causes of action). The plaintiff is not entitled to any payments under these coverages.

The plaintiff is also entitled to interest, costs and a reasonable attorney's fee. Counsel for the plaintiff will prepare and submit an appropriate order for judgment as herein determined and a showing as to the requested amount of attorney's fees. The form of the judgment should be submitted to defendant's counsel. Unless the attorney's fees can be agreed upon the matter will be set for hearing and determination the next time this judge is in North Platte.