ROBERT P. STEPHENS, APPELLEE, v. ALLIED MUTUAL INSURANCE COMPANY, A CORPORATION, APPELLANT.
156 N. W. 2d 133

Filed February 2, 1968. No. 36651.

Wilson, Barlow & Watson, for appellant.

Mattson, Ricketts and Gourlay, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

WHITE, C. J.

The plaintiff sues his own insurer for recovery under the uninsured motorist provision of his automobile liability policy. The primary question is whether the in-

solvency or the failure to defend or pay a claim subsequent to the accident by a tort-feasor's liability carrier constitutes a denial of such coverage by the tort-feasor's carrier thereby invoking the liability of the plaintiff's carrier under the uninsured motorist clause. The district court found for the plaintiff on this issue and we affirm the judgment.

Plaintiff, on November 17, 1964, was negligently injured by tort-feasor Russell in an automobile accident. Russell was insured on that date by Royal Standard Insurance Company (hereinafter referred to as Royal Standard). Royal Standard was notified but, in effect, did nothing. On April 5, 1965, Royal Standard became insolvent and was placed in receivership.

Plaintiff had been in correspondence with Royal Standard. The defendant's files indicated a request by Royal Standard for plaintiff's bills and a valuation of the claim. The defendant, in a letter of August 17, 1965, reviewed this situation and notified the plaintiff it denied liability. Plaintiff then sued Russell for damages and recovered a valid default judgment in the sum of $50,000 on September 28, 1965. A claim in this amount was filed with the receiver of Royal Standard, which was allowed in the amount of $5,000. Subsequently, on November 17, 1965, this action was filed and is before this court on the sustaining of a motion for summary judgment in favor of plaintiff in the sum of $10,000, which is the policy limit under the plaintiff's uninsured motorist coverage on his policy for which a separate premium was paid by him. Our Nebraska statute (section 60-509.01, R. S. Supp., 1965), requiring uninsured motorist coverage, does not define the term "uninsured motorist." Therefore the terms of the policy in this respect are controlling. The family protection coverage (uninsured motorist) endorsement in the policy defining an uninsured automobile is as follows:

"(c) 'uninsured automobile' means:

"* * * an automobile with respect to the * * * use of

which there is * * * no bodily injury liability bond or insurance policy applicable at the time of the accident * * * or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder * * *."

In construing an insurance policy, such as in the present case, the following basic principles are applicable: " 'An insurance policy should be construed as any other contract to give effect to the intent of the parties at the time it was made.' Koehn v. Union Fire Ins. Co., 152 Neb. 254, 40 N. W. 2d 874. See, also, Rathbun v. Globe Indemnity Co., 107 Neb. 18, 184 N. W. 903, 24 A. L. R. 191.

" 'The language should be considered not in accordance with what the insurer intended the words to mean, but what a reasonable person in the position of insured would have understood them to mean. If the contract was prepared by the insurer and contains provisions reasonably subject to different interpretations, one favorable to the insurer and one advantageous to the insured, the one favorable to the latter will be adopted.' Koehn v. Union Fire Ins. Co., supra. See, also, 29 Am. Jur., Insurance, § 166, p. 180." Lonsdale v. Union Ins. Co., 167 Neb. 56, 91 N. W. 2d 245.

The controlling question is whether the subsequent insolvency of the tort-feasor's insurance company or its failure to defend the claim or pay the judgment constitutes a "denial of coverage" within the meaning of this clause in the insurance contract.

A provision, drawn by the insurer to comply with the statutory requirement of uninsured motorist coverage, must be construed in light of the purpose and policy of the statute. Such a provision, drawn in pursuance of a statutorily declared public policy, is enacted for the benefit of injured persons traveling on the public highways. Its purpose is to give the same protection to the person injured by an uninsured motorist as he would have had if he had been injured in an accident caused

by an automobile, covered by a standard liability policy. Such provisions are to be liberally construed to accomplish such purpose. 7 Am. Jur. 2d, Automobile Insurance, § 135, p. 460; Bryant v. State Farm Mutual Automobile Ins. Co., 205 Va. 897, 140 S. E. 2d 817; Storm v. Nationwide Mutual Ins. Co., 199 Va. 130, 97 S. E. 2d 759, 69 A. L. R. 2d 849; Travelers Indemnity Co. v. Kowalski, 233 Cal. App. 2d 607, 43 Cal. Rptr. 843; Mills v. Farmers Ins. Exchange, 231 Cal. App. 2d 124, 41 Cal. Rptr. 650; State Farm Mutual Automobile Ins. Co. v. Brower, 204 Va. 887, 134 S. E. 2d 277.

By its terms, the, policy provision extends the coverage beyond the mere existence of an insurance contract at the time of the accident. It is to be assumed, considering the, separate premium charge and the remedial and public policy purpose of the statute, that the voluntary inclusion of this clause by the defendant-insurer itself was intended to make the coverage effectual rather than merely nominal.

The uninsured motorist on the highway is a real risk. He is a real risk because of his probable inability to pay or respond for damages for negligent driving. The purpose of the statute and this particular clause is to eliminate that risk. To subdivide or apportion this risk and to make it dependent upon the whimsical uncertainty of solvency of an unidentified and uncertain tort-feasor insurance carrier is both unrealistic and unreasonable. It invokes an entirely unrelated and undeterminable factor that mitigates and lessens the accomplishment of the purpose of the statute and the area of effectual coverage sought to be reached by the voluntary inclusion of the clause in the insuring provision. The majority rule, almost without contradiction, is that where uninsured motorist statutes or policy provisions have defined an uninsured motorist in the same language as was used in the present policy, subsequent insolvency of an insurer constitutes a denial of coverage within the meaning of the, provisions of the policy or statute. State Farm

Mutual Automobile Ins. Co. v. Brower, *supra;* North River Ins. Co. v. Gibson, 244 S. C. 393, 137 S. E. 2d 264; Katz v. American Motorist Ins. Co., 244 Cal. App. 2d 886, 53 Cal. Rptr. 669; Pattani v. Keystone Ins. Co., 426 Pa. 332, 231 A. 2d 402.

The identical issue presented in this case was decided by the Pennsylvania Supreme, Court (June 29, 1967) in Pattani v. Keystone Ins. Co., *supra.* The Pennsylvania uninsured motorist statute, as in Nebraska, did not define the term, and the policy provisions were the same as in the present case. The Supreme Court of Pennsylvania held "* * * that insolvency of the tort feasor's carrier occurring subsequent to the accident, and the consequent refusal or inability of that carrier to defend or pay judgments to which its insured had become liable, constitutes a denial of coverage within the uninsured motorist provision of the insured's policy and entitles the other insured to proceed in accordance, with his own insurance policy." These cases illustrate, and reason dictates, that at a minimum a policy provision which provides for coverage when the tort-feasor's insurer "denies coverage" is reasonably subject to different interpretations. A reasonable person could well have understood that to deny coverage was to fail to meet the liabilities of the insured tort-feasor. The insurance policy was prepared by the insurer, and reasonably differing interpretations must be decided in favor of the insured. Lonsdale v. Union Ins. Co., 167 Neb. 56, 91 N. W. 2d 245. It appears, therefore, that either as a matter of original construction, or upon the grounds of ambiguity, this clause must be construed contrary to the contention of the defendant.

Defendant cites Uline v. Motor Vehicle Accident Indemnification Corp., 213 N. Y. S. 2d 871, 28 Misc. 2d 1002. This case apparently holds to the contrary, but a close analysis of this case reveals that the court was not construing an uninsured motorist statute or a policy provision in an insurance contract. Rather, New York has set up a corporation contributed to by insurance

companies, and recovery is limited to seven specific categories, one of which is denial of coverage by the tort-feasor's insured. The court held that the statute must be strictly construed and that since insolvency of the tort-feasor's carrier was not specifically provided as one of the categories for recovery, the insurer was not liable. This, of course, while authority for the defendant's position, is a considerably different situation than we have under our statute and the specific provisions of the insuring contract between the plaintiff and defendant. Defendant cites a recent intermediate court of appeals decision in Michigan which apparently is contrary to our holding herein and to the majority rule. Michigan Mutual Liability Co. v. Pokerwinski (Mich. App.), 154 N. W. 2d 609. This decision is not from Michigan's court of last resort and is not persuasive because it apparently holds, despite the cited decisions therein to the contrary, that the language of the policy is not subject to construction. It is interesting to note that although this is a recent case (November 30, 1967), the two authorities cited therein for the position taken were subsequently overruled by the courts of last resort of the states therein and become authority for the decision we have reached in this case. North River Ins. Co. v. Gibson, *supra;* Pattani v. Keystone Ins. Co., *supra.*

The proper constructon of this separately paid for insurance coverage clause should not be an exercise in the blind semantics of literal language construction. We do not feel that the Legislature intended to restrict the benefits of uninsured motorist coverage to those cases where the tort-feasor lacks insurance at the very moment of injury. We feel that when an insurer fails to defend a claim or to satisfy a judgment against its insured, whether *voluntarily or involuntarily*, it "denies coverage" in the only meaningful sense of the term. Realistically, an injured person is as unprotected by a tort-feasor insurance carrier who has become insolvent prior to the satisfaction of his claim just as much as is the

person injured by a tort-feasor who has no insurance at all. We therefore hold that the insolvency of a tort-feasor's carrier occurring subsequent to the accident, with a consequent refusal or inability of the carrier to defend or pay a judgment or claim resulting therefrom for which the tort-feasor has become liable, constitutes a "denial of coverage" within the meaning of such provision in the uninsured motorist clause of the insured's policy. The above rule is bottomed upon the fundamental principles that the uninsured motorist statute established in this state a public policy that every insured is entitled to recover damages he or she would have been able to recover if the offending motorist had maintained a policy of liability insurance in a solvent company capable of responding for damages duly adjudicated against its insured.

A more difficult question is next presented by the defendant in the contention that it is entitled to a setoff in the amount of $1,000 for medical payments paid under the medical payments coverage provision of the policy in the event that it is determined that the Russell automobile was uninsured. This exemption is claimed under section 6(d) of the uninsured motorist coverage which provides as follows: "* * * the company *shall not be obligated* to pay under this Coverage that part of the damages which the insured may be entitled to recover from the owner or operator of an uninsured automobile which represents expenses for medical services paid *or payable* under the Medical Payments Coverage of the policy." (Emphasis supplied.)

The mimimum coverage required by statute is $10,000 per person and $20,000 per accident. The uninsured motorist protection required to be offered by this statute as between the insured and his insurer is in the nature of a substitute liability policy; and to permit a limitation of this coverage by a policy provision so that it may be reduced below that required by statute, would be void as being contrary to the statute and the declared

public policy and purpose as embodied in the provisions of the law.

The two coverages (medical payment and uninsured motorist) are separate and independent contractual provisions in the policy for which a separate premium is charged and collected. On its face, this provision limits the coverage by providing that the company "shall not be obligated to pay under this coverage * * *." By its terms, the liability is limited to a "portion of the damages" recoverable against the tort-feasor, and, in effect, carves out a restricted cause of action against the substitute carrier. But it is argued that the setoff in medical payments which reduces the coverage is supplied by the insurer under this separately contracted for medical payment coverage. Nevertheless, the provision either limits the substituted liability coverage or the separately contracted and charged for liability under the medical payment coverage and this is accomplished by transporting the medical payment coverage into the uninsured motorist coverage by way of limitation. The argument as to the effect of this provision, as distinguished from its basic nature, becomes dialectically complex. If the provision does not limit coverage, as the insurer contends, we fail to see its purpose. Surely its object is not to give additional coverage to the insured. Conversely, if its purpose is to alter or change the company liability for the separately charged premium for medical payments, it would have to be struck down as an alteration of the separately contracted for contractual risk assumed by the insurer under the terms of the medical payment coverage.

The complex, if not devious, ramifications of the application of the language of this clause can be quite simply illustrated. If the plaintiff in this case had contracted for medical expense coverage in the sum of $10,000 and had suffered medical expenses in excess of this amount, the effect of the setoff clause herein involved would be to completely eliminate the uninsured motorist coverage. By its terms this provision is not in the nature of sub-

rogation but a limitation of liability. It can be contended that not only would the insurer pay nothing under the statutory coverage, but under its policy subrogation rights it would be entitled, to the extent of its medical expense payments, to any proceeds recovered from the uninsured tort-feasor motorist. It may also be contended that if it be true that this setoff provision does not reduce the company's liability on the uninsured motorist coverage, then payment of part or all of the insurer's liability under its medical expense coverage would not have the result of reducing the amount of the insurer's claim against amounts recovered from the uninsured tort-feasor. We refuse to be drawn into this dialectical quagmire. The separately contracted for and paid for uninsured motorist coverage, required under the statutorily declared public policy purpose of the statute, may not be restricted or inhibited by the effect or the risk of the effect of the application of this provision which on its face is a limitation of liability.

The general rule is that an insurer may not limit its liability under uninsured motorist coverage by setoffs or limitations through "other insurance," excess insurance, or medical payment reduction clauses, and this is true even when the setoff for the reduction is claimed with respect to a separate, independent policy of insurance (workmen's compensation) or other insured motorist coverage. And this is true because the insured is entitled to recover the same amount he would have recovered if the offending motorist had maintained liability insurance. Phoenix Ins. Co. v. Kincaid (Fla. App.), 199 So. 2d 770; Sellers v. United States Fidelity & Guaranty Co. (Fla. App.), 185 So. 2d 689; Standard Accident Ins. Co. v. Gavin (Fla. App.), 184 So. 2d 229; Sims v. National Casualty Co. (Fla.), 171 So. 2d 399; Hack v. Great American Ins. Co. (Fla.), 175 So. 2d 594.

We therefore hold that a provision in an automobile liability policy that an insurer shall not be obligated to pay under uninsured motorist coverage for that part of

the damages which the insured may be entitled to recover from the owner or operator of an uninsured automobile which represents expenses for medical services paid or payable under the medical payments coverage of the policy is void and against public policy in that it reduces the minimum coverage of uninsured motorist protection prescribed and required by the law.

Next, defendant contends it is not liable for attorney's fees because under our statute, section 44-359, R. R. S. 1943, this is an indemnity policy on which recovery does not permit the allowance of attorney's fees. Security State Bank v. Aetna Ins. Co., 106 Neb. 126, 183 N. W. 92; Borden v. General Ins. Co., 157 Neb. 98, 59 N. W. 2d 141.

The statute permits an allowance of attorney's fees on liability and guaranty policies. Ordinarily, as the above cases hold, fire insurance and collision coverage under an automobile policy are indemnity contracts for the payment of loss direct to the insured. But the uninsured motorist coverage herein is a substituted liability policy by which the insurer becomes liable for the negligence or fault of the uninsured motorist. It is a guaranty contract because it is a promise to answer for the debt, default, or miscarriage of another person. See Belk v. Capital Fire Ins. Co., 102 Neb. 702, 169 N. W. 262. There is no indemnification for loss direct to the insured in this case, but rather an assumption of liability or a promise to answer for the debt and default of a third uninsured person resulting therefrom. There is no merit to this contention.

This action was decided on motion for summary judgment, and the defendant contends that there was a genuine issue of fact because there is no evidence that the tort-feasor's carrier, Royal Standard, refused to defend the action. This is the same argument, cast in a different form, that the defendant is not liable because there has been no "denial of coverage" under the provisions of the policy. The subsequent insolvency and

inability or failure to pay the claim or judgment by the the tort-feasor's carrier, Royal Standard, is conclusively established in the record. As we have previously seen, this is sufficient under the law to constitute a denial of coverage, and the invocation of liability under the uninsured motorist coverage clause of the defendant's policy. There is, therefore, no genuine material issue of fact remaining, and this contention is without merit.

Defendant complains that the allowance of attorney's fees in the sum of $2,500 was excessive. The amount allowed rests in the sound discretion of the district court, considering the elements of the amount involved, the responsibility assumed, the questions of law raised, the time and labor necessarily required in the performance of duties, the professional diligence and skill required, and the result of the services performed. Metcalf v. Hartford Acc. & Ind. Co., 176 Neb. 468, 126 N. W. 2d 471. It would serve no purpose in this opinion to review the record with respect to each one of these elements. Suffice it to say that we have carefully reviewed the record and, considering the different elements involved, have come to the conclusion that there has been no abuse of discretion by the trial court in the allowance of the attorney's fees under all the circumstances. The statute further provides for attorney's fees for services in this court, and a further fee is allowed counsel for the plaintiff in this case in the sum of $500.

The judgment of the district court is correct and is affirmed.

AFFIRMED.