**Lucille BOOTH, Administratrix De Bonis Non of the Estate of Ernest R. Booth, Deceased, Appellant,**

v.

**SEABOARD FIRE & MARINE INSURANCE COMPANY, a Corporation, Appellee.**

**Lucille BOOTH, Administratrix De Bonis Non of the Estate of Ernest R. Booth, Deceased, Appellee,**

v.

**SEABOARD FIRE & MARINE INSURANCE COMPANY, a Corporation, Appellant.**

**Nos. 19750, 19762 and 19763.**

United States Court of Appeals, Eighth Circuit.

Aug. 11, 1970.
Rehearing Denied Oct. 30, 1970.

---

James E. Schneider, North Platte, Neb., for Lucille Booth.

C. J. Gatz, of Maupin, Dent, Kay, Satterfield & Gatz, North Platte, Neb., for Seaboard Fire & Marine Ins. Co.; Harold W. Kay, North Platte, Neb., on the briefs.

Before MATTHES, Chief Judge, and GIBSON and LAY, Circuit Judges.

LAY, Circuit Judge.

Lucille Booth, the Administratrix De Bonis Non of the Estate of Ernest R. Booth, deceased, brings this appeal challenging the amount of the judgment rendered in her suit against Seaboard Fire and Marine Insurance Company, the insurer. The action was originally brought under the Declaratory Judgment Act, 28 U.S.C.A. §§ 2201 and 2202 seeking interpretation of two contracts of uninsured motorist insurance owned by Ernest R. Booth (hereinafter designated the insured). Seaboard filed a cross-appeal on the ground that the estate was barred from any recovery because of refusal to comply with a request for arbitration. The company additionally claims that attorney fees allowed plaintiff in the district court were not "reasonable," and that recovery under the "accidental death benefit" provision of both policies was improper. It is agreed that Nebraska law controls.

The decedent-insured died as the result of an automobile-tractor collision of October 25, 1963, on U.S. Highway 30 in Dawson County, Nebraska. The driver of the automobile was George E. Cayson, an uninsured motorist. The decedent was injured in the course of his employment with Gothenburg Feed Products. At the time of the accident, the decedent, Booth, owned two separate liability policies with Seaboard, each providing for uninsured motorist coverage.[1] Each policy provided limits for uninsured motorist coverage of $20,000 for each accident. Current premiums had been paid by the insured at the time of loss. Both policies contained clauses which read:

"Any amount payable as damages because of bodily injury sustained in an accident by a person who is insured under this coverage shall be reduced by * * * the amount paid and the present value of all amounts payable on account of such bodily injury under any Workmen's Compensation Law, Disability Benefits Law and any similar law."

At trial in federal court the parties stipulated that the dependents of the insured were entitled to receive compensation payments for a period of 325 weeks under the provisions of the Nebraska Workmen's Compensation Act. The compensation carrier, Maryland Casualty Company, had paid benefits of $40 per week for 179 weeks through March 30, 1967, and it was stipulated that the dependents were then still entitled to benefits for an additional 146 weeks, plus $400 burial allowance, totaling $13,400.[2] Maryland Casualty waived any right of subrogation it might have had against the uninsured motorist fund. The

record further shows that on September 27, 1965, an action for wrongful death was commenced in federal district court against Cayson and the uninsured owner of the car Cayson was driving, one Larry Sheely.[3] On July 7, 1966, a default judgment was entered against Cayson, the uninsured motorist, in the amount of $23,000. The present action followed.

The district court held that the setoff clause under the Seaboard policies (relating to the reduction of amounts payable for workmen's compensation benefits) was void under Nebraska law, relying upon Stephens v. Allied Mutual Ins. Co., 182 Neb. 562, 156 N.W.2d 133 (1968). However, under general principles of equity and fairness, the district court reasoned that in order to prevent the plaintiff from getting a "windfall," the workmen's compensation payments made to the plaintiff must nevertheless be setoff. This result, the court said, quoting from Stephens, would allow "the insured * * * to recover the same amount he would have recovered if the offending motorist had maintained liability insurance." 156 N.W.2d at 139. The court, therefore, allowed plaintiff recovery in an amount equal to the judgment against the uninsured motorist, less the total compensation benefits paid or to be paid.

In addition, the district court held: (1) that plaintiffs were entitled to $1,000 from each policy for accidental death benefits; (2) that attorney fees of $3,000 should be awarded to plaintiff; and (3) that the arbitration clause in the policies was waived, and, was also void under Nebraska law. The court considered other issues relating to notice and coverage under the medical payment clauses. Those findings are not contest-

1. Each policy provided:
   "Protection Against Uninsured Motorists Coverage:
   The company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injuries sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile * * * *"

2. This amount when figured as of March 30, 1967, does not reflect the present value of the benefits for the remaining weeks.

3. The district court found that Seaboard had been notified upon the filing of the suit and, subsequently, at each stage of the proceedings.

ed upon appeal. The district court's opinion is reported at 285 F.Supp. 920 (1968).

Upon review, we reverse as to the amount of the judgment against Seaboard being limited and hold that plaintiff was entitled under Nebraska law to a recovery of the full $23,000, undiminished by workmen's compensation benefits. In all other respects, we affirm the findings and judgment of the district court.

*Arbitration Clause*

We discuss first the issues raised on cross-appeal. If the insurer is correct as to the arbitration questions, then all other issues would be rendered moot. The arbitration clause of both policies reads:

"Arbitration

"If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured or do not agree as to the amount of payment which may be owing under the Uninsured Motorist Coverage, then, upon written demand of either, the matter or matters upon which such person and the company do not agree shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Such person and the company each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this paragraph."

In Heisner v. Jones, 184 Neb. 602, 169 N.W.2d 606 (1969), the Nebraska court, relying on a long line of Nebraska authorities, held that such a clause is unenforceable since it contravenes the public policy of the state. The defendant company contends, however, that an insurance contract is in the stream of interstate commerce and the arbitration provision is therefore protected under the Federal Arbitration Act. 9 U.S.C.A. §§ 1 et seq. We need not decide that question here. The district court found under the express terms of the policy that arbitration may be enforced only by written demand of either party and that neither the company nor the insured made such a request here. The company relies on a letter written by its senior adjuster to plaintiff's counsel on November 10, 1965, which reads in part:

"I would like to point out and request that you read the arbitration section in connection with uninsured motorists coverage and if you have any further word in connection with this, please let us hear from you."

The trial court found as a matter of fact that this was not a written demand to arbitrate under the policy. Such a finding cannot be disturbed upon appeal unless we deem it clearly erroneous under Fed.R.Civ.P. 52(a). The record indicates no ground upon which to reject that finding as clearly erroneous.

Defendant contends that the policy likewise requires its "written consent" before any judgment can be obtained against the uninsured motorist or itself. We agree with the trial court's analysis that:

"If the arbitration provision is waived or held unenforceable, the no suit without written permission clause should also be waived or held unenforceable. To hold otherwise would have the effect of forcing arbitration." 285 F.Supp. at 924.

*Attorney Fees*

On cross-appeal Seaboard likewise challenges the award of attorney fees and the recovery for accidental death benefits under both policies. The award of attorney fees under the Nebraska statute rests solely within the discretion of the trial judge. In the instant case an award of $3,000 was made. The insurer argues that this sum is excessive in relation to its pretrial offer of $7,000 and to the court's total award of $9,600 on the uninsured motorist cover-

age (plus $2,000 for death benefits). This, of course, is only one factor the trial judge may take into consideration in awarding attorney fees. The complex nature of the lawsuit, the responsibility assumed by counsel, the approximate time in services, measured by exact proof or weighed by the court's own judgment in light of counsel's preparation and trial performance, are all additional factors to be weighed. The ultimate award for fees rests within the sound discretion of the trial court. See Metcalf v. Hartford Accident & Indemnity Co., 176 Neb. 468, 126 N.W.2d 471 (1964). We find that the attorney fees awarded were within the bounds of reason. There is no evidence of abused discretion.

*Accidental Death Benefits*

■ Plaintiff sued for accidental death benefits under each policy. The only defense asserted below was that the death benefit coverages do not apply "to bodily injury or property damage arising out of the operation of farm machinery." The trial court thoroughly analyzed the existing law and concluded for reasons not material on this appeal that the above exclusion did not apply. The company does not now contest that conclusion but relies on an entirely new defense relating to "other insurance" and urges that the maximum benefits accruing to plaintiff would be the coverage provided by the $1,000 limit of one policy. It is well settled that where a possible policy defense was not pleaded or raised before the trial court it cannot be argued for the first time on appeal. See Universal Towing Co. v. Hartford Fire Ins. Co., 421 F.2d 379, 381 (8 Cir. 1970); National Compressor Corp. v. Carrow, 417 F.2d 97, 103 (8 Cir. 1969); Charter Oak Fire Ins. Co. v. Mann, 304 F.2d 166, 168 (8 Cir. 1962). The district court's findings as to accidental death benefits are affirmed.

*"Other Insurance" Clause*

We turn now to the plaintiff's appeal. Plaintiff urges two basic grounds of error: first, that she should be able to satisfy her judgment from both uninsured motorist policies because each policy provides a separate insurance contract unrelated to the other; and second, that if the company's liability is limited to the amount of the judgment, to-wit $23,000, Nebraska law voids any setoff of workmen's compensation benefits and it was error for the trial court to reduce plaintiff's recovery by that amount.

■ The trial court did not pass upon the first question because it found plaintiff's recovery must be setoff by the workmen's compensation benefits and the total recovery was less than the coverage of one policy. Since we find this holding to be error, we first consider plaintiff's claim that recovery should be for the maximum of both policies, i. e. $40,000. This argument attempts to circumvent the clause of both policies which treats the other contract only as excess insurance. This clause reads:

"With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under the Uninsured Motorists Coverage shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance."

Additionally, it is clear that the insuring agreement limits the liability under the policies to "all sums" which the insured could recover from the tort-feasor. As distinguishable from our discussion, infra, concerning the setoff clause, there exists no asserted public policy of the State of Nebraska which militates against these contractual agreements. See A. Widiss, A Guide to Uninsured Motorist Coverage § 2.59 (1969). Cf. Safeco Ins. Co. of America v. Robey, 399 F.2d 330 (8 Cir. 1968). See also Sellers v. United States Fidelity & Guaranty Co., 185 So.2d 689 (Fla.1966). As the trial court observed in discussing the

same clause in regard to medical payments, the Nebraska courts have enforced excess-insurance clauses so as to restrict liability to the extent of one's adjudicated damage. 285 F.Supp. at 935. Cf. Turpin v. Standard Reliance Ins. Co., 169 Neb. 233, 99 N.W.2d 26 (1959).

■ However, the second paragraph of the "other insurance" clause, which provides that the damages shall be deemed not to exceed the higher of applicable limits, has not enjoyed the same favor as the excess-insurance clause. This clause is similar to paragraph 4 of the policy which specifically provides:

"Other Automobile Insurance in the Company

"With respect to any occurrence, accident, death or loss to which this and any other automobile insurance policy issued to the named insured by the company also applies, the total limit of the company's liability under all such policies shall not exceed the highest applicable limit of liability or benefit amount under any one such policy."

Although there are decisions to the contrary (see discussion in Widiss, supra, § 2.61 and Donaldson, Uninsured Motorist Coverage, Insurance Counsel Journal (July 1969) 397), we conclude that Nebraska law would strike down such a restriction. First, such a limitation runs contradictory to the insuring agreement of each policy which reads that the company shall pay "all sums" which the insured could recover from the uninsured carrier. Furthermore, those courts which have struck down

such a limitation follow the reasoning that led the Nebraska Supreme Court to invalidate the "setoff" provision relating to "other insurance" benefits in Stephens v. Allied Mutual Ins. Co., supra. In *Stephens,* the Nebraska Supreme Court relied upon several Florida cases which dealt with the specific limitation question of two policies. The Florida Supreme Court in Sellers v. United States Fidelity & Guaranty, supra, observed:

"Our views herein are predicated upon our construction of Sec. 627.0851 [Uninsured Motorist Statute]. We consider that it provides for a limited type of compulsory automobile liability coverage. It appears to require coverage for bodily injury caused by the negligence of an uninsured motorist to the extent of specific limited amounts. It does not permit 'other insurance' clauses in the policy which are contrary to the statutorily limited amounts of coverage. It is clear that the statute does not limit an insured only to one $10,000 recovery under said coverage where his loss for bodily injury is greater than $10,000 and he is the beneficiary of more than one policy issued under Sec. 627.0851." 185 So.2d at 692.

See also Safeco Ins. Co. of America v. Robey, supra; Smith v. Pacific Auto Ins. Co., 240 Or. 167, 400 P.2d 512 (1965); Bryant v. State Farm Mutual Auto Ins. Co., 205 Va. 897, 140 S.E.2d 817 (1965).[4]

*The Setoff Issue*

The issue presented is whether the limits of the uninsured motorist policies

---

4. The Supreme Court of Virginia observed:
   "The limit of the recovery of the plaintiff under any or all insurance policies carrying the uninsured motorist provision required by 38.1–381(b) would be the amount of the insured's judgment against the uninsured motorist. Here the plaintiff has a judgment for $85,000 upon which he has collected $10,059 from State Farm, in full of the policy issued to his father. He still holds a policy issued to him by State Farm into which the statute puts a provision requiring it to pay him 'all sums' which he is entitled to recover from the owner or operator of the uninsured motor vehicle. The sum he is entitled to recover under that requirement is the unpaid part of his judgment within the limit of the policy. To say that he is not entitled to recover anything under this policy because his father had a policy under which he has received part of the sum he is entitled to recover from the uninsured motorist is to amend the statute, not construe it." 140 S.E.2d at 820.

may be "setoff" by other insurance benefits the insured has received. As indicated, the trial court found that the workmen's compensation benefits, amounting to $13,400, must be subtracted from the total liability of the uninsured motorist carrier, thereby limiting plaintiff's recovery to $9,600. The policy reads that the insured's "damages * * * shall be reduced by * * * the amount[s] * * * payable * * * under * * * Workmen's Compensation * * *" The trial court, adhering to Nebraska law, under *Stephens*, held that such setoff provision was invalid. However, in order to avoid a "windfall" to the plaintiff, the court relied on equitable principles in holding that the compensation benefits should nevertheless be setoff.

The reasoning of the Nebraska court invalidating the clause may be summarized as follows: (1) an uninsured motorist policy is in the nature of a "substitute liability" policy; (2) to permit a limitation of this coverage could reduce it below that required by statute; (3) both coverages provide independent contractual provisions upon which a separate premium is charged and collected; (4) by the setoff terms, the liability is limited to only a portion of the damages recoverable against the tort-feasor, thus placing a restriction or limitation of liability on the "substitute carrier"; (5) the clause in question by its very nature is not a "subrogation" clause, but one of restricted liability; and (6) it is against the "declared public policy purpose" of the statute to restrict the limits of liability below the statutory amount

of $10,000 per person, $20,000 per accident.[5]

The Nebraska court, speaking through Chief Justice White, concluded:

"The general rule is that an insurer may not limit its liability under uninsured motorist coverage by setoffs or limitations through 'other insurance,' excess insurance, or medical payment reduction clauses, and this is true even when the setoff for the reduction is claimed with respect to a separate, independent policy of insurance (workmen's compensation) or other insured motorist coverage. And this is true because the insured is entitled to recover the same amount he would have recovered if the offending motorist had maintained liability insurance. Phoenix Ins. Co. v. Kincaid (Fla.App.), 199 So.2d 770; Sellers v. United States Fidelity & Guaranty Co. (Fla.), 185 So.2d 689; Standard Accident Ins. Co. v. Gavin (Fla.App.), 184 So. 2d 229; Sims v. National Casualty Co. (Fla.App.), 171 So.2d 399; Hack v. Great American Ins. Co. (Fla.App.), 175 So.2d 594." 156 N.W.2d at 139.

Many states have upheld this provision. See e. g. Niekamp v. Allstate Ins. Co., 52 Ill.App.2d 364, 202 N.E.2d 126 (1964); Allen v. United States Fidelity & Guaranty Co., 188 So.2d 741 (La. App.1966); Jarrett v. Allstate Ins. Co., 209 Cal.App.2d 804, 26 Cal.Rptr. 231 (1962), and cases collected in Widiss, supra, § 2.67. At least one court has found that the restriction is enforceable only to the extent that the total monies collected exceed the total damages adjudicated. Michigan Mutual Liability Co.

5. The Nebraska statute reads in part, Neb. Rev.Stat. § 60–509.01 R.R.S.1943 (Reissue 1968):

"Motor vehicle liability policy; protection against uninsured and hit-and-run motor vehicles; requirements. No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in Section 60–509, under provisions approved by the Director of Insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom. * * *"

v. Mesner, 2 Mich.App. 350, 139 N.W.2d 913 (1966). Regardless of the merits or argued logic of these decisions, this court is bound to follow Nebraska law in diversity cases. Universal Underwriters Ins. Co. v. Wagner, 367 F.2d 866, 874 (8 Cir. 1966).

One might reason that *Stephens* is factually distinguishable. In *Stephens* the total amount collected under both coverages did not exceed the adjudicated damages incurred by the insured.[6] In the instant case, the adjudicated damage is less than the sum of the uninsured coverage and the collateral insurance. However, it is difficult for us to rationalize that the statutory meaning and the declared public policy purpose of the Nebraska uninsured motorist statute may vary depending upon the amount of injury the insured suffers. The interpretation of the statute and application of the setoff clause should not turn upon the contingency of the amount of damages and the amount of collateral insurance available. The rationale of the Nebraska court in voiding the clause is just as valid without regard to damage or collateral insurance. The setoff clause in either instance remains repugnant to the public policy requiring the particular uninsured motorist policy to provide a policy of *minimal* limits. We find nothing in Nebraska law which suggests any reasoned deviation from declaring the setoff clause invalid. As we have observed, the *Stephens* case specifically holds that clause void.

The trial court reached the same conclusion as to Nebraska law but nevertheless held that under general equitable principles the insurer's liability could be setoff by the compensation benefits. The district court reasoned that no subrogation rights exist for the compensation carrier and by allowing a setoff the plaintiff would not therefore receive a "windfall" of more than his actual damage.[7] The defendant urges that the district court's holding is justified by the language found in *Stephens* which reads: "The insured is entitled to recover the same amount he would have recovered if the offending motorist had maintained liability insurance." This construction of the language of the *Stephens* case slights the intended meaning of the Nebraska court. Workmen's compensation benefits are never setoff in favor of the tort-feasor. To apply *Stephens* in such a way fails to consider practical factors involved in workmen's compensation payments in relation to third party claims. The subrogation

6. However, this assertion overlooks that the *Stephens* case specifically involved a setoff payment of medical expense under the same policy. In this sense, *Stephens* is identical to the "double recovery" alleged here.

7. However, the so-called "windfall" to the plaintiff arises because of several collateral reasons unrelated to any detriment to the uninsured motorist carrier. First, premiums were paid by the insured to the company on two separate uninsured motorist policies; second, as part of the insured's employment contract the employee is entitled to receive compensation benefits upon an injury incurred during the course of his employment (see Bronder v. Otis Elev. Co., 121 Neb. 581, 237 N.W. 671 (1931)); and third, the insured's employer paid premiums for workmen's compensation coverage. It might be argued that an equal or even greater "windfall" inures to the uninsured motorist carrier if it may avoid its primary liability by reason of the existence of collateral insurance.

The company circumvents its contracted liability and retains the premiums solely by reason of a third party's compensation insurance covering the insured. See Widiss, supra, §§ 2.64–2.67.

The Oregon Supreme Court observed under similar facts:

"[t]he damages to the person are not readily measured in money, and there is little likelihood of fraud or profit through over-insurance. Furthermore, the mere assertion that one would seek out an accident with an uninsured motorist in order to collect upon someone else's insurance policy contains its own answer. In the case at bar, there is no reason to deny the insured the benefits for which he has contracted under his own insurance simply because he also has some incidental rights as a third-party beneficiary under another person's insurance." Smith v. Pacific Auto Ins. Co., 240 Or. 167, 400 P.2d 512, 515 (1965).

right of the compensation carrier exists against the tort-feasor and not the assured. This is true even though a settlement between the tort-feasor and the injured party has been executed. See Burks v. Packer, 143 Neb. 373, 9 N.W.2d 471 (1943). In many instances, for varied reasons, the compensation carrier may choose to forego its subrogation rights against a tort-feasor. Thus, a lump sum settlement by the compensation carrier with the injured employee may precede the third party suit. On occasion, simultaneously a total or partial waiver of the workmen's compensation carrier's subrogation right might be effected. Such waiver might be given to avoid expenses of a "shaky" third party suit or simply to avoid the risk of future medical payments or increased disability. If the injured party is successful in his third party litigation, the result is that he receives the total damage from the tort-feasor and the workmen's compensation carrier receives only a partial recovery, or in the event of a total waiver, nothing at all. Under these circumstances it would be highly inequitable to cause the injured party to setoff the compensation benefits from the amount owed by the uninsured motorist carrier. This would be directly contra to the language of *Stephens*. Furthermore, to recognize a setoff of future compensation benefits in favor of an uninsured carrier could lead to other serious inequities. Often times, particularly where death benefits are involved, future compensation benefits may be terminated upon remarriage or death of the widow. Thus, if future compensation benefits must be setoff from the judgment against the uninsured motorist carrier it might be impossible to determine the money damages owed at that time. Future compensation benefits might be setoff from the judgment against the uninsured motorist carrier which, depending upon the future contingency of death or remarriage of the beneficiary, would never be subject to payment by either carrier.

■ We need not base our decision on the above considerations. The true difficulty we find with the district court's application of "equitable relief" is that it is contrary to the substantive law of the State of Nebraska. The doctrine of Erie R. R. v. Tompkins, 304 U. S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), is applicable to a question of construction of an insurance contract arising in a suit in equity and decisions of the state court govern. See Ruhlin v. New York Life Ins. Co., 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. 1290 (1938). As stated in Guaranty Trust Co. of New York v. York, 326 U.S. 99, at 105, 65 S. Ct. 1464, at 1467, 89 L.Ed. 2079 (1945), "In giving federal courts 'cognizance' of equity suits in cases of diversity jurisdiction, Congress never gave, nor did the federal courts ever claim, the power to deny substantive rights created by State law or to create substantive rights denied by State law."

We conclude that under controlling Nebraska law the judgment must be reversed and the cause remanded with directions to enter judgment for the insured for the full amount of his damage, to-wit $23,000, with no setoff for workmen's compensation benefits.