AMERICAN STATES INSURANCE COMPANY, A CORPORATION,
APPELLANT, V. FARM BUREAU INSURANCE COMPANY OF NEBRASKA,
A CORPORATION, ET AL., APPELLEES.
583 N.W. 2d 358

Filed August 18, 1998.   No. A-97-339.

Dan H. Ketcham, Suzanne M. Shehan, and Robert S. Keith, of Hansen, Engles & Locher, P.C., for appellant.

Terry M. Anderson and David S. Lathrop, Jr., of Hauptman, O'Brien, Wolf & Lathrop, P.C., for appellee Luikens.

HANNON, IRWIN, and INBODY, Judges.

HANNON, Judge.

Barbara Luikens, Tara Lawson, and Amanda Hill took a car belonging to Amanda's parents, James and Jonnie Andersen, while the Andersens were not at home. All three girls were under the legal driving age. The girls were subsequently involved in a one-vehicle accident while Tara was driving, and Barbara, who was sitting in the back seat, was injured. This case involves a dispute over which, if either, of two insurance policies issued by two insurance carriers covers Barbara's claim for injuries, that is, the liability policy covering the vehicle involved issued by Farm Bureau Insurance Company (Farm Bureau), or the uninsured motorist insurance provision of the

policy covering Barbara's father's vehicle issued by American States Insurance Company (American States).

American States, the plaintiff, filed a declaratory action against both Barbara, by and through her father, Alvin Luikens, and Farm Bureau, seeking a judgment determining that its policy did not provide uninsured motorist coverage to Barbara. Upon cross-motions for summary judgment, the district court found that Tara was not covered by liability insurance at the time of the accident and further that the uninsured motorist coverage issued by American States was applicable to Barbara. Therefore, the court denied American States' motion and granted a summary judgment of dismissal. American States now appeals, arguing that an exclusion in its policy providing that an otherwise covered person is excluded from uninsured motorist coverage if that person is using the vehicle without the reasonable belief that he or she may do so, is applicable in the instant situation and necessarily excludes Barbara from coverage. We agree that, if valid, the provision would have that effect. However, we conclude that the exclusion is contrary to the provisions of the Uninsured and Underinsured Motorist Insurance Coverage Act, Neb. Rev. Stat. §§ 44-6401 through 44-6414 (Cum. Supp. 1994 & Cum. Supp. 1996), and is therefore void as against public policy. Thus, we affirm.

## SUMMARY OF EVIDENCE

At the hearing on the motions, the court received the depositions of the three youths; the deposition of Tara's mother, Yvonne Lawson; and copies of the policies issued by American States and Farm Bureau. We will quote the applicable provisions of these policies in the discussion below.

The undisputed evidence shows that on August 10, 1995, Barbara, age 14; Tara, age 13; and Amanda, age 14, congregated at Amanda's house in Valley, Nebraska. Neither Amanda's stepfather, James Andersen, nor her mother, Jonnie Andersen, was home. Amanda was expecting her boyfriend to arrive, and when he did not, she began to worry. After a while, the three girls decided to use the Andersens' vehicle to drive to Elkhorn to look for him. After Amanda had difficulty driving, Tara drove to Venice, Nebraska. There the girls became frightened and decided to return to Amanda's home. On the way home, Tara

lost control of the vehicle and crashed into a ditch. Amanda, sitting in the front passenger's seat, was not seriously injured, but Barbara, who was sitting in the back seat, sustained serious injuries.

The depositions contain a detailed examination of all three girls. Based on the issues in this case, the only additional facts necessary to frame the issues in this appeal are that Barbara lived at home with her father, Alvin; that she had spent the night before the accident at Amanda's home; that when the girls decided to take the Andersens' vehicle, Amanda's parents were not at home; and that the girls made no effort to contact either of Amanda's parents. Barbara admitted that she did not think anyone had permission to drive the car, and she further admitted that she understood that Amanda did not have permission to take the car. Barbara additionally admitted that Amanda did not say that her mother had given her permission to drive the car, but she did testify that Amanda had told her that Amanda's mother had given Amanda a key to the car. Barbara also admitted that she knew that Tara was an underage driver and that Tara did not have a license.

Amanda testified that taking the vehicle to go visit her boyfriend was a "mutual thing" among the girls, but she did not testify that she had permission or that the other two girls thought she had permission to take the vehicle. Tara's mother, Yvonne, testified that she, Yvonne, was not insured on the date of the accident.

The court sustained Barbara's motion for summary judgment as to American States, sustained Farm Bureau's motion for summary judgment, and overruled American States' motion for summary judgment.

## ASSIGNMENTS OF ERROR
American States contends that the court erred in (1) granting Barbara's motion for summary judgment and (2) overruling its motion, because the undisputed facts show that a provision in the uninsured motorist section of its policy excludes coverage in this case. American States also argues that there is a genuine issue of material fact as to whether Barbara had reason to believe that she was entitled to use the Andersens' vehicle.

## STANDARD OF REVIEW

In reviewing an order granting a motion for summary judgment, an appellate court views the evidence in a light most favorable to the party opposing the motion and gives that party the benefit of all reasonable inferences deducible from the evidence. *Vowers & Sons, Inc. v. Strasheim*, 254 Neb. 506, 576 N.W.2d 817 (1998). Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Id.*

When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Veskerna v. City of West Point*, 254 Neb. 540, 578 N.W.2d 25 (1998).

## ANALYSIS

*Is Tara an Uninsured Motorist?*

There is no dispute of material fact on this issue. The only possible sources of liability insurance for Tara arise either from her family or in connection with the vehicle she was driving. Tara's mother testified that she was uninsured on the date of the accident. Thus, the only remaining source of liability insurance could be the insurance policy on the Andersens' vehicle.

Farm Bureau had issued a policy to James and Jonnie Andersen, insuring the vehicle the girls were driving when the accident occurred. The liability provision of that policy provided in significant part as follows: "**Part I[.] Liability[.] Additional definitions used in this Part: Insured** under this Part means: 1. With respect to a **covered automobile:** a. *you* and any **resident relative**; b. any other person using it with *your* permission and within the scope of your permission . . . ." The definitional section defines "**Resident relative**" as a person "1. who is related to *you* by blood, marriage or adoption; and 2. who is a resident of *your* household."

It is undisputed that Amanda lived with her stepfather and mother in their home in Valley. Thus, she is a resident relative within the meaning of the policy and, therefore, an insured.

The liability coverage section of that policy states: "*We* will pay damages for **bodily injury** or **property damage** for which the law holds an **insured** responsible because of an **automobile accident** resulting from the ownership, maintenance or use of a **covered automobile** or **non-owned automobile**." Amanda, the insured, was not the driver. Any negligence of Tara, the driver, cannot be imputed to Amanda, a passenger, as a joint adventurer, or one involved in a joint enterprise, because there was no "community of pecuniary interest." See Restatement (Second) of Torts § 491, comment *c.* at 548 (1965). See, also, *Winslow v. Hammer*, 247 Neb. 418, 527 N.W.2d 631 (1995) (adopting definition of joint enterprise found in Restatement). No one puts forth any other theory under which Amanda is responsible for Barbara's injuries.

The Farm Bureau policy lists as an insured "any other person using it [the insured vehicle] with *your* permission and within the scope of your permission." In the definitional section of that policy, "your" is defined to mean the named insured, or, in this case, James and Jonnie Andersen. Thus, the issue is whether Tara was driving with the permission of the Andersens. Nebraska recognizes that there may be implied permission to drive an automobile. *MFA Ins. Companies v. Mendenhall*, 205 Neb. 430, 288 N.W.2d 270 (1980). The evidence is very clear that Tara did not have either the express or implied permission of either of the Andersens to drive their automobile.

Neb. Rev. Stat. § 60-534 (Reissue 1993) provides that a "motor vehicle liability policy . . . (2) shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured . . . ." Thus, as far as liability coverage, the insurance statute authorizes the exclusion of such persons as Tara from that coverage. Later, in considering a related provision of uninsured motorist coverage, we do not find such statutory permission.

In this case, there are no facts that would support a finding that Tara had the Andersens' permission. Tara's mother testified that she was not insured on the day of the accident. There is no suggestion that there is any other possible source of liability insurance covering Tara as she drove on August 10, 1995. We

hold that there is no genuine issue of material fact on the issue and that, as a matter of law, Tara was an uninsured driver during the accident.

*Does Luikens' Policy Extend Uninsured Motorist Coverage to Tara?*

The uninsured motorist coverage provisions of the policy issued by American States to Barbara's father, Alvin, provided in significant part:

> [W]e will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured . . . vehicle" because of "bodily injury" sustained by an "insured" and caused by an accident. The owner's or operator's liability for these damages must arise out of the ownership, maintenance, or use of the "uninsured" or "underinsured motor vehicle."

The policy provides that an insured includes any member of the named insured's family. Barbara would clearly be an insured and be entitled to uninsured motorist benefits unless a valid exclusion applies.

Part C, the "Uninsured or Underinsured Motorists Coverage" section, contains the following exclusions:

> A. We do not provide Uninsured . . . Motorists Coverage for "bodily injury" sustained by any person:
>
> 1. [Regarding an uninsured vehicle owned by the named insured or a member of his family. See § 44-6413(b) (Cum. Supp. 1996).]
>
> 2. [Regarding settlement without the insurer's consent. See § 44-6413(a).]
>
> 3. [Using the insured vehicle for public conveyance. See § 44-6413(c).]
>
> 4. Using a vehicle without a reasonable belief the person may do so.
>
> B. [Stipulating no benefits of an insurer under workers' compensation or disability benefit laws.]
>
> C. [Regarding punitive or exemplary laws. See § 44-6408 (Cum. Supp. 1994).]

All of the exclusions except A(4) are summarized for brevity, as only A(4) is of importance to our consideration. The statutory

references included above are to those statutes which appear to authorize the exclusion, and we were unable to locate a statute authorizing the exclusion when no statutory section is given. Exclusion A(4) is the exclusion under consideration in this opinion and is therefore quoted verbatim.

██ American States argues that Barbara was using the Andersens' vehicle without the reasonable belief that she had permission to do so and that, therefore, the exclusion applies. The Nebraska Supreme Court has repeatedly stated that an automobile is being used by an individual who is traveling in it, regardless of whether it is being operated by him or her or by another. *National Union Fire Ins. Co. v. Bruecks*, 179 Neb. 642, 139 N.W.2d 821 (1966); *Metcalf v. Hartford Acc. & Ind. Co.*, 176 Neb. 468, 126 N.W.2d 471 (1964). Compare, *State Farm Mutual Automobile Ins. Co. v. Kersey*, 171 Neb. 212, 106 N.W.2d 31 (1960). As explained by the court,

> "For the 'use' of an automobile by an individual involves its employment for some purpose or object of the user while its 'operation' by him involves his direction and control of its mechanism as its driver for the purpose of propelling it as a vehicle. It is perfectly clear that an automobile is being used by an individual who is traveling in it regardless of whether it is being operated by him or by another. . . ."

*Metcalf*, 176 Neb. at 472-73, 126 N.W.2d at 474.

It is clear that Barbara was using the vehicle when she sustained her injuries. Barbara's testimony establishes that she knew neither she, Tara, nor Amanda had permission to use the Andersens' automobile. Therefore, the evidence establishes that Barbara did not have a reasonable belief that she had permission to use the Andersens' vehicle, and there is no genuine issue of fact on this issue.

### Is Exclusion Against Public Policy?

Barbara argues that the aforementioned exclusion is contrary to public policy. She argues that uninsured and underinsured motorist policies must conform to the spirit and terms of the Uninsured and Underinsured Motorist Insurance Coverage Act. Barbara argues that § 44-6408 makes such coverage mandatory

for the protection of persons insured and further that the "insured" under the policy is any member of the Alvin Luikens family.

The Supreme Court has said:

> [T]he uninsured motorist statute established in this state a public policy that every insured is entitled to recover damages he or she would have been able to recover if the offending motorist had maintained a policy of liability insurance in a solvent company capable of responding for damages duly adjudicated against its insured.

*Stephens v. Allied Mut. Ins. Co.*, 182 Neb. 562, 569, 156 N.W.2d 133, 138 (1968). The Supreme Court has recently followed *Stephens* as precedent, and in so doing quoted as follows:

> "The general rule is that an insurer may not limit its liability under uninsured motorist coverage by setoffs or limitations through 'other insurance,' excess insurance, or medical payment reduction clauses . . . . And this is true because the insured is entitled to recover the same amount he would have recovered if the offending motorist had maintained liability insurance."

*Muller v. Tri-State Ins. Co.*, 252 Neb. 1, 7, 560 N.W.2d 130, 135 (1997).

> "A provision, drawn by the insurer to comply with the statutory requirement of uninsured motorist coverage, must be construed in light of the purpose and policy of the statute. Such a provision . . . is enacted for the benefit of injured persons traveling on the public highways. Its purpose is to give the same protection to the person injured by an uninsured motorist as he would have had if he had been injured in an accident caused by an automobile covered by a standard liability policy. Such provisions are to be liberally construed to accomplish such purpose."

*Id.* at 8, 560 N.W.2d at 135.

*Muller* and *Stephens* were concerned with uninsured or underinsured policies that limited the insurer's liability to its insureds by providing for setoffs. In the case at hand, we are concerned with the validity of a contractual exclusion that limits or decreases the insurance carrier's exposure by decreasing the number of events where uninsured or underinsured coverage

would otherwise be extended to the insured. A review and summary of the current applicable statutes are helpful in understanding the legislative purpose.

Section 44-6408 provides in summary:

> (1) No policy insuring against liability . . . shall be delivered . . . with respect to any motor vehicle principally garaged in this state unless coverage is provided for the protection of persons insured who are legally entitled to recover compensatory damages . . . from (a) the owner or operator of an uninsured motor vehicle . . . .

As previously determined, Barbara is an insured under her father's policy. Barbara therefore argues that § 44-6408 requires the policy to extend uninsured motorist coverage to her. The following are other provisions of the act which may be helpful in considering this argument.

Section 44-6405 (Cum. Supp. 1994) defines uninsured motor vehicle as "a motor vehicle with respect to the ownership, operation, maintenance, or use of which: (1) There is no bodily injury liability insurance or bond applicable at the time of the accident. . . ."

Section 44-6407 (Cum. Supp. 1996) provides for exclusions from the definition of "uninsured motor vehicle" and includes a vehicle covered by the same policy as the insured; a vehicle owned by, furnished, or available for the regular use of the named insured or any resident of the insured's household; a self-insured vehicle; and a vehicle owned by the government.

Section 44-6409 (Cum. Supp. 1996) provides: "The maximum liability of the insurer . . . shall be the amount of damages . . . less the amount [recovered from the one liable], but in no event shall the maximum liability of the insurer under either such coverage be more than the limits of the coverage provided." Section 44-6410 (Cum. Supp. 1996) provides that policies shall not be stacked, and § 44-6411 (Cum. Supp. 1996) provides for the amount of recovery and the priority of payment when there are multiple policies. Sections 44-6412 and 44-6413(1)(a) (Cum. Supp. 1996) provide for the party's rights in the event of settlement with the liable party or parties.

Subdivisions (1)(b) through (e) of § 44-6413 contain a list of events where the "coverages provided in the Uninsured and

Underinsured Motorist Insurance Coverage Act shall not apply." These exclusions include cases where the bodily injury occurs where the "insured" is occupying a vehicle owned by the "named insured," where the vehicle is used as a public conveyance, where the insured is struck by a vehicle owned by the named insured or a spouse or a relative residing with the named insured, or where the statute of limitations has run on the claim. Section 44-6413 also provides that insurers providing excess or umbrella coverage need not provide uninsured motorist coverage and that insurers may make underinsured motorist coverage part of uninsured motorist coverage. Section 44-6414 (Cum. Supp. 1996) provides that the Director of Insurance shall adopt and promulgate the carrying out of the provisions of the act.

One provision that is significant to our analysis is § 44-6413(4), which provides: "Nothing in the [act] shall be construed to prevent an insurer from offering, making available, or providing coverage under terms and conditions more favorable to its insured or in limits higher than are required by the act." This provision necessarily suggests, and common sense dictates, that insurers may not issue policies which carry terms and conditions less favorable to the insured than those provided in the act.

The exclusion under consideration in the instant case provides coverage less favorable to the insured than would be provided in the absence of such exclusion. The same is true with regard to the other exclusions, both those authorized by statute and those not authorized. The act clearly requires liability policies to contain provisions extending uninsured motorist coverage. As noted above, the act defines the required coverage, the minimum amount of liability, and some exclusions. It is obvious that an insurance company could reduce its exposure or risk by excluding coverage of certain events or conditions and that if enough exclusions are allowed, the public could receive markedly less than what the Legislature has decreed it is entitled to. With each exclusion, the insured would receive less coverage than what the Legislature has directed, although exclusions such as the one in the American States policy would probably affect very few of its insureds. What possible basis

could the courts have for deciding that some exclusions unauthorized by statute are valid and some not?

The Nebraska Supreme Court recently ignored a policy's underinsured motorist provision which had the effect of lessening the rights provided to insureds under the act, and instead, the court applied the provisions of the act. In *Horace Mann Cos. v. Pinaire*, 248 Neb. 640, 645, 538 N.W.2d 168, 172 (1995), the policy in question provided that underinsured coverage was excluded where there was a settlement with " 'any person or organization who may be legally liable therefor . . . .' " (Emphasis omitted.) What was then Neb. Rev. Stat. § 60-582 (Reissue 1993), now codified as § 44-6413(1)(a), provided that underinsured motorist coverage was excluded where the insured settled without the written consent of the insurer and such settlement "adversely affect[ed]" the rights of the insurer. Without discussing the specific point, the *Horace Mann Cos.* court stated that the statutory provision controlled and proceeded to determine that the settlement in question did adversely affect the insurer. In so doing, it stated that "the issue is controlled by § 60-582, which requires that the settlement adversely affect the rights of the insurer before coverage can be denied." 248 Neb. at 649, 538 N.W.2d at 174. If the *Horace Mann Cos.* court had thought that the contract provision controlled over the more restrictive statute, it would not have needed to analyze the evidence to determine if the insured was prejudiced thereby.

American States relies on *Mayfield v. Allied Mut. Ins. Co.*, 231 Neb. 308, 310, 436 N.W.2d 164, 166 (1989), in which the court examined an uninsured motorist provision requiring physical contact with a " 'hit and run vehicle' " in order for the injured insured to be covered. At the time, the relevant statute required such insurance to cover " 'hit-and-run motor vehicles,' " *id.*, but nothing was said about the necessity for physical contact. The court, citing extensively to its previous decision in *Grace v. State Farm Mut. Auto. Ins. Co.*, 197 Neb. 118, 246 N.W.2d 874 (1976), decided that in view of the history of the term in the courts, the Legislature probably intended hit-and-run incidents to require physical contact. *Mayfield, supra*, and *Grace, supra*, at least imply that had the court decided that the Legislature *understood* hit-and-run *did not* include a require-

ment of physical contact, the exclusion would have been void and against public policy.

American States also relies on *Kracl v. Aetna Cas. & Surety Co.*, 220 Neb. 869, 374 N.W.2d 40 (1985), where the court concluded that a provision in a policy excluding "stacking" of the coverage from more than one uninsured motorist policy was valid. Compare § 44-6410 (generally prohibiting stacking). In doing so, the *Kracl* court stated: "As the statute neither requires nor prohibits stacking, the question then becomes, What does the language of the insurance policy in question provide?" *Id.* at 874, 374 N.W.2d at 44. This principle was recognized earlier in *Charley v. Farmers Mut. Ins. Co.*, 219 Neb. 765, 366 N.W.2d 417 (1985). *Kracl* and *Charley* are clearly distinguishable from the case at hand, because after the exclusions allowed in them are given their effect, the injured person is still covered by uninsured motorist insurance to the full limit of the policy on the automobile the person is using and, therefore, to the full limit of the amount the statutes require. That would not be the effect of the exception under consideration here.

We find only one case involving a similar situation concerning uninsured motorist coverage. In *Dingsor v. Merchants Mutual Insur. Co.*, 72 Misc. 2d 862, 340 N.Y.S.2d 562 (1973), the uninsured motorist coverage provided to a mother was extended to her daughter who was injured while a passenger in an automobile owned by a third party, which automobile the jury found to have been operated without the consent of the owner. The driver was an uninsured motorist, and the mother's policy stated that coverage was extended to any relative, provided that " 'the other actual use thereof is with the permission, or reasonably believed to be with the permission of the owner . . . .' " *Id.* at 863, 340 N.Y.S.2d at 564. The relevant New York statute specifically protected the insured's benefits against injury or death specifically caused by the owner or operator of a motor vehicle operated without the permission of the owner. The comparable Nebraska statute, § 44-6408, is arguably broader, in that it provides such insurance whenever the operator of the car has no liability coverage.

It might be argued that excluding a person that is using a motor vehicle without a reasonable belief that he or she has the

permission of the owner from uninsured motorist coverage would have the tendency to discourage people from using other persons' vehicles without their permission. This is probably a desirable result. However, such a general notion should not fly in the face of the rather clear intention of the Legislature that the insured driver's benefits be protected from uninsured or underinsured motorists.

In the instant case, the vehicle in question was an uninsured motor vehicle within the meaning of § 44-6405. Moreover, § 44-6408 provides that "[n]o policy insuring against liability . . . shall be delivered . . . unless coverage is provided for the protection of persons insured . . . ." Barbara is an insured person under her father's policy. The statutory directives are clear and absolute. An interpretation which would approve the exclusion at issue would fly in the face of the statements of *Muller v. Tri-State Ins. Co.*, 252 Neb. 1, 560 N.W.2d 130 (1997), and *Stephens v. Allied Mut. Ins. Co.*, 182 Neb. 562, 156 N.W.2d 133 (1968), as quoted above, that is, that an insured is entitled to recover the same amount he or she would have recovered if the offending motorist had maintained insurance.

We therefore conclude that there is no genuine issue of fact and that the trial court was correct in granting the defendants' motions for summary judgment.

AFFIRMED.